J. CHRISTOPHER JORGENSEN, ESQ.
STATE BAR NO. 5382
LEWIS AND ROCA LLP
3993 Howard Hughes Pkwy., Ste. 600
Las Vegas, NV  89169
(702) 949-8200
(702) 949-8398/fax

Attorneys for Defendant
Bank of America, N.A.

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEVADA

FRED MESI and ERIC MESI,

                    Plaintiffs,

vs.

WASHINGTON MUTUAL F.A., a Federal
Savings Bank; CALIFORNIA
RECONVEYANCE COMPANY, a Foreign
California Corporation; LA SALLE BANK,
N.A., as Trustee for Wa Mu Mortgage Pass-
Through Certificates Series 2006-AR7 Trust;
WESTERN EXCHANGE SRVICES CORP., a
Nevada Corporation; WESTERN TITLE
COMPANY, INC., a Nevada Corporation;
GENEVA MARTRAKUS; DANITA F.
FALLEN and MESHELLE BAGGERMAN,
individually; MORTGAGE ELECTRONIC
REGISTRATION SYSTMEMS, INC., a
subsidiary of MERSCORP., INC., a Delaware
corporation [MERS]; BANK OF AMERICA
CORPORATION, N.A.; et al.,

                    Defendants.

Case:  3:09-cv-00582-JCM-VPC

**MOTION TO DISMISS**

Pursuant to Fed. R. Civ. P. 12(b)(6) and 9(b), Defendant Bank of America, N.A.,

("Defendant") hereby moves to dismiss Plaintiffs' First, Second, Third and Thirteenth Claims for

Relief in the Complaint against it because it fails to state any cognizable claims upon which relief

could be granted and fails to plead fraud with particularity. The grounds for this Motion are set

forth in the accompanying Memorandum of Points and Authorities.

## MEMORANDUM OF POINTS AND AUTHORITIES

This is one in a series of lawsuits filed by the same attorneys on behalf of borrowers who defaulted on their mortgage loans.  They want to avoid their payment obligations, by claiming that the use of a registry system developed by MERSCORP, Inc. and Mortgage Electronic Registration Systems, Inc. (collectively, "MERS"), to track ownership and servicing of the loans after origination, was improper, and thus somehow prevents foreclosures resulting from Plaintiffs' defaults.

The cases, and their unusual theory, have been roundly rejected to date.

First, this Court has already dismissed similar claims in three other cases.  Green v. Countrywide Home Loans, Inc., No. 3:09-cv-00374 (D. Nev. Jan. 11, 2010) (Reed, J.) (attached hereto as Ex. 1);  Lopez v. Executive Trustee Servs., LLC, No. 3:09-cv-00180 (D. Nev. Jan. 13, 2010) (Reed, J.) (attached hereto as Ex. 2). Goodwin v. Executive Trustee Services, LLC, No. 3:09-cv-306-ECR-PAL (Reed., J.) (attached hereto as Ex. 3).

Similarly, Judge Teilborg of the District of Arizona dismissed outright one of the related cases making many of the same claims advanced in this lawsuit, and rejecting challenges to the MERS system in the process.  See Cervantes v. Countrywide Home Loans, Inc., No. CV 09-517, 2009 WL 3157160 (D. Ariz. Sept. 24, 2009) (Teilborg, J.). And, in Dalton, Judge Robert Jones of this Court denied a motion for preliminary injunction in another related case, stating that "as far as this Court can determine, there is no likelihood of success on the merits." Dalton v. CitiMortgage, Inc., et al., No. 3:09-CV-534-RCJ, Dkt. No. 132 (D. Nev. Oct. 9, 2009) (Jones, J.) (transcript excerpts attached here to as Ex. 4).  Finally, this Court has rejected claims challenging MERS' involvement with borrowers' deeds of trust.  Ramos v. Mortgage Electronic Registration Systems, Inc., No. 2:08-cv-1089-ECR-RJJ, 2009 WL 5651132, at *3 (D. Nev. Mar. 5, 2009) ("[U]nder the deed of trust, MERS was empowered to foreclose on the property and to appoint [another defendant' as substitute trustee for purpose of conducting the foreclosure.")[1]

---

[1] As explained below in detail, certain claims have been transferred to a Multidistrict Litigation proceeding in the District of Arizona.

1    Plaintiffs' Complaint contains the same deficiencies identified in these decisions.

2    Plaintiffs cannot maintain a fraud in the inducement claim because Plaintiffs fail to plead facts that

3    would give rise to any duty on the part of Bank of America, N.A., and fail to plead fraud with

4    particularity.  Plaintiffs also fail to describe how Bank of America, who was not involved in the

5    loan origination, could be in violation of Nevada's Unfair Lending Practices Act, NRS 598D.100.

6    Plaintiffs' purported claims for "injunctive relief" and "declaratory relief" are remedies—not

7    causes of action.

8    Bank of America N.A. did not participate in the loan origination, is not a servicer of the

9    loan, and does not own the loan. It is unclear why Plaintiffs have named Bank of America as a

10   party to this lawsuit.

11   Because Plaintiffs fail to state facts showing plausible claims for relief, the Court should

12   grant this Motion and dismiss the First, Second, Third and Thirteenth Claims for Relief of the

13   Complaint.

14                                **BACKGROUND**

15   Plaintiffs Fred and Eric Mesi filed this lawsuit on August 25, 2009.  Dkt. No. 1.  The

16   Complaint asserts a hodgepodge of claims concerning alleged misconduct in the loan origination

17   and foreclosure process, including allegations that the defendants used MERS to profit from

18   making predatory loans to borrowers and to hide the identity of the lenders and investors in the

19   loan. Compl. ¶¶ 7-8.

20   The Judicial Panel on Multidistrict Litigation consolidated this case (and others) into the <u>In</u>

21   <u>re: Mortgage Electronic Registration Systems, Inc ("MERS") MDL</u>, (MDL No. 2119).  <u>See</u> <u>In re</u>

22   <u>MERS Litig.</u>, 659 F. Supp. 2d. 1368, 1371 (J.P.M.L. Dec. 7, 2009) (transferring, in part, pretrial

23   proceedings to Judge James Teilborg of the District of Arizona).  In its transfer order, the JPML

24   only transferred claims relating to the "formation and operation of MERS," while the remaining

25   claims were remanded to this Court.  <u>Id.</u> at 1370.

26   In an order dated March 23, 2010, Judge Teilborg remanded claim 3 and part of claims 1, 2

27   and 13, which related to origination activity, back to this Court and ordered that motions to

28

Lewis and Roca LLP
3993 Howard Hughes Parkway
Suite 600
Las Vegas, Nevada 89169

536164.1

1  dismiss these claims be filed within 15 days. See In re MERS MDL, MDL Docket No. 09-2119-

2  JAT, document number 43 (D. Ariz. Mar. 23, 2010) (attached as Ex. 5).

3         Therefore this Motion to Dismiss concerns only claims 1, 2, 3 and 13 of Plaintiffs'

4  Complaint.[2]

5         The underlying argument of this motion is that Bank of America played no role in any of

6  the activities alleged by Plaintiffs.  Bank of America has no relationship whatsoever with Plaintiffs

7  Fred and Eric Mesi.  Once the loan was originated, the loan was bundled with other loans and then

8  went through the securitization process.  JPMorgan Chase Bank, as successor in interest to

9  Washington Mutual Bank, N.A. is the loan servicer.  Therefore, it is JPMorgan Chase Bank who

10  collects the loan payments from plaintiffs every month.  LaSalle Bank was the trustee for the

11  securitized bundle of loans, specifically named as  the trustee for WaMu Mortgage Pass-Through

12  Certificates Series 2006-AR7.  As trustee, LaSalle Bank would receive money from the servicer

13  and then distribute the money to the various bond holders of the securitized notes.

14         In October of 2008, the duties of LaSalle Bank were collapsed and its charter was absorbed

15  by Bank of America.  (See Exhibit 6, Assignment of Deed of Trust dated October 12, 2009). As

16  such, the only connection between Bank of America and the subject loan is that  Bank of America,

17  as successor by merger with LaSalle Bank, is now the trustee for WaMu Mortgage Pass-Through

18  Certificates Series 2006-AR7.  Bank of America does not have any contact with Plaintiffs.

19  Instead, Bank of America merely acts as the paying agent to the bond holders of the Pass-Through

20  Certificates.  It receives this money from the loan servicer.  Although complicated, Bank of

21  America had no involvement in the loan origination, disclosures or the determination of interest

22  rates, and has no involvement or contact with the Plaintiffs.

23                              **GOVERNING LAW**

24         Rule 12(b)(6) requires Plaintiffs to allege facts which, if true, would provide adequate

25  grounds for relief; "formulaic recitation of the elements of a cause of action" will not suffice.  Bell

26  Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).  As the Supreme Court recently admonished,

27  legal conclusions can only "provide the complaint's framework," and "they must be supported by

28

---

[2] A Motion to Dismiss Plaintiffs' non-remanded claims will be filed concurrently with the MDL Court.

Lewis and Roca LLP
3993 Howard Hughes Parkway
Suite 600
Las Vegas, Nevada 89169

536164.1

1   actual allegations." <u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1937, 1950 (2009).  <u>Iqbal</u> made clear that

2   threadbare recitals of a cause of action's elements supported by conclusory statements"

3   are insufficient to overcome a motion to dismiss.  <u>Id.</u>  And this Court need not accept

4   "unreasonable inferences" in deciding whether a claim is stated.  <u>Isenberg v. ETS Servs., LLC</u>,

5   589 F. Supp. 2d 1193, 1198 (C.D. Cal. 2008).

6                                    **ARGUMENT**

7           The only claims in the Complaint filed by Plaintiffs Fred and Eric Mesi before this Court –

8   fraud in the inducement, unfair lending practices, and "claims" for injunctive and declaratory

9   relief – fail to state a claim for plausible relief and should be dismissed.  On January 8, 2010, this

10  Court previously dismissed the similar fraud in the inducement claims of plaintiff Goodwin in the

11  case <u>Goodwin v. Executive Trustee Services, LLC</u>, No. 3:09-cv-306-ECR-PAL (Reed., J.)  for

12  two reasons.  First, the Court held that the claim was deficient because the Goodwins failed to

13  plead the claim with particularity as required by Rule 9(b), noting it was "replete with vague and

14  conclusory allegations."  <u>Goodwin</u>, 2010 WL 234786, at *8-*9.  Second, this Court also dismissed

15  the fraud in the inducement claim because Plaintiffs failed to plead facts that would give rise to

16  any duty of disclosure under Nevada law.  <u>Id.</u> at *9.  The Court should similarly grant this Motion

17  and dismiss the Complaint as to Bank of America with prejudice.

18  **I.      THE FRAUD IN THE INDUCMENT CLAIM FAILS BECAUSE PLAINTIFFS DO
19              NOT ALLEGE FACTS ESTABLISHING ACTIONABLE
            MISREPRESENTATIONS OR OMISSIONS**

20          Plaintiffs' Fraud in the Inducement claim fails on two grounds:  (1) Bank of America did

21  not originate or service the loan--there is no duty on the part of Bank of America, and (2) the

22  Complaint falls far short of the Rule 9(b) standard.  This claim should be dismissed.

23          **A.      Plaintiffs Fail To Allege Facts Establishing That Bank of America Owed Any
                     Duty To Fred and Eric Mesi**
24
25          First, the putative fraud in the inducement claim fails for the same reason it did in the other

26  cases filed by attorney Lawton:  there are no facts pleaded that would give rise to any duty on

27  behalf of Bank of America.  <u>See Id.</u> at *9 (dismissing claim because "Plaintiffs do not allege what

28  duties, if any, . . . Defendants named in the Complaint owed Plaintiffs.").  Both Fred and Eric

Mesi complain that Bank of America "failed to disclose the material terms of the[ir] loan[s]"

because it "fail[ed] to explain" that they "were not qualified to enter the loan on the terms stated," and that Bank of America "concealed the . . . risk of default and the risk of foreclosure" from them.  Compl. ¶¶ 113, 117.  Here, Bank of America was not involved in the loan origination or loan servicing.  Bank of America had no relationship with plaintiffs and therefore no duty.  "In order for a mere omission to constitute actionable fraud, a plaintiff must first demonstrate that the defendant had a duty to disclose the fact at issue." <u>Nevada Power Co. v. Monsanto Co.</u>, 891 F. Supp. 1406, 1417 (D. Nev. 1995) (citing <u>Cohen v. Wedbush, Noble, Cooke, Inc.</u>, 841 F.2d 282, 287 (9th Cir. 1988)).

The Court can and should dismiss the Plaintiffs' claim for Fraud in the Inducement on this basis alone.[3]

**B.    Plaintiffs Fail to Allege Any Actionable Misrepresentations Or Omissions**

The Fraud should also be dismissed because it fails to set forth facts that comply with Rule 9(b).  A claim of fraud is deficient if it does not "specify the misrepresentations [and] explain in what way they were false." <u>Arroyo v. Wheat</u>, 591 F. Supp. 141, 144 (D. Nev. 1984).  The only allegation of misrepresentation contained in the Complaint is that an unnamed agent or agents of Bank of America told Fred and Eric Mesi that they were "qualified" for their loans and, in the case of Fred and Eric Mesi, somehow misrepresented their ability to refinance.  Compl. ¶ 113.  Plaintiffs do not allege facts specifying <u>who</u> made these alleged misrepresentations, <u>when</u> the alleged misrepresentations took place, <u>why</u> the misrepresentations were false or misleading (Plaintiffs did, after all, qualify for their loans in that they were approved for and received the loan proceeds), nor even <u>what</u>, exactly, the misrepresentations were.  As such, their claim contains none of the factual averments Rule 9(b) requires, and it should be dismissed.  See <u>Goodwin</u>, 2010 WL 234786, at *6 (dismissing Plaintiffs' fraudulent conspiracy claim because they had failed to allege the "the who, what, when, where, and how of the misconduct charged") (citing <u>Vess v. Ciba-Geigy Corp.</u>, 317 F.3d 1097, 1106 (9th Cir. 2003)); <u>Schreiber Distributing Co. v. Serv-Well Furniture Co., Inc.</u>, 806 F.2d 1393, 1401 (9th Cir. 1986) (Rule 9(b) requires that plaintiff allege

---

[3] Further, Plaintiffs' allegation that Bank of America "concealed the true terms of the[ir] loans" (Compl. ¶ 114) is baseless because Plaintiffs do not allege that they did not receive their loan documents or that those loan documents did not reveal the terms of the loan that Plaintiffs received.

Lewis and Roca LLP
3993 Howard Hughes Parkway
Suite 600
Las Vegas, Nevada 89169

536164.1

"the time, place, and specific content of the false representations as well as the parties to the representation").

## II. PLAINTIFFS' UNFAIR LENDING PRACTICES CLAIMS ARE TIME BARRED AND HAVE NO CONNECTION TO ANY ACTIVITY BY BANK OF AMERICA

Plaintiffs assert as their third claim for relief violations of the Unfair Lending Practices Act, NRS 598D.100.  Plaintiffs' claim fails because Bank of America, of course, did not make the home loans. Bank of America had nothing to do with placing the loans on the property, misstating Plaintiffs' income, making the initial loan disclosures, or anything else in Plaintiffs' laundry list of violations. Thus, because Plaintiffs cannot allege that Bank of America "originated the loan at issue", nor can Plaintiffs make any allegation that Bank of America "knowingly or intentionally made a home loan," their claim for unfair lending must be dismissed. <u>Velasquez v. HSBC Mortgage Services</u>, 2009 WL 2338852, *2-3 (D. Nev July 24, 2009).

In Nevada, the statute of limitations for actions based on fraud is three years. NRS 11.190(3)(d). An action in fraud accrues not when the plaintiff has all the facts needed to constitute a fraud claim but commences to run from the date of the discovery of facts which in the exercise of proper diligence would have enabled the plaintiff to learn of the fraud.[4] Here, Plaintiffs' Unfair Lending Practices claim allege fraud and appear to surround the origination of the loan. The subject loan was originated more than three years before Plaintiffs filed their Complaint. Accordingly, their claims based on those loans are barred by the statute of limitations.

### A. Countrywide Did Not Originate The Mesi Loan

The Unfair Lending Practices allegations made by Plaintiffs against Bank of America should be dismissed for at least two reasons. First, the statute applies only to lenders who originate a borrower's loan. Nev. Rev. Stat. § 598D.100(2)(b) (violation to "[]knowing or intentionally <u>make a home loan</u>" contrary to the act) (emphasis added). Bank of America did not originate the Mesi loan (Complaint ¶ 25). Nor was it the loan servicer. Plaintiffs cannot assert a remedy under the Unfair Lending Practices Act against Bank of America.

---

[4] *Nevada Power Co. v. Monsanto Co.*, 955 F.2d 1304, 1992 U.S. App. LEXIS 1236 (9th Cir. 1992) (quoting *Howard v. Howard*, 69 Nev. 12, 239 P.2d 584, 1952 Nev. LEXIS 53 (1952).

Lewis and Roca LLP
3993 Howard Hughes Parkway
Suite 600
Las Vegas, Nevada 89169

536164.1

1    Plaintiffs' Unfair Lending Practices claims are also outside the three-year statute of

2    limitations. Nev. Rev. Stat. § 11.190(3)(a).  Plaintiffs entered into their loan in April of 2006.

3    Complaint ¶ 25.  Their claims are time-barred.

4    **B.     The Loan Does Not Qualify For The Relief Sought**

5    The Plaintiffs' claim also fails because their loan does not meet the criteria for the relief

6    that the seek.

7    First, the Unfair Lending Practices statute does not apply to their loan.  Plaintiffs obtained

8    the loan in April 2006, and the version of the Unfair Lending Practices statute in effect at that time

9    applied the statute only to "a home loan."  Nev. Rev. Stat. § 598D.100.1(b) (2003).  The statute in

10   turn defined "home loan" as a "mortgage" as defined by§ 152 of the Home Ownership and Equity

11   Protection Act of 1994, 15 U.S.C. § 1602(aa) ("HOEPA"), and its regulations at 12 C.F.R. §

12   226.32.  Nev. Rev. Stat. § 598D.040 (2003).   HOEPA's definition of "mortgage" was very

13   limited, and covered only high cost transactions where (1) the annual percentage rate ("APR")of

14   the loan at the time of consummation of the loan exceeded a specified threshold, based on a

15   comparison with certain market rates; or (2) where the total "points and fees" payable at closing

16   exceeded 8% of the loan amount. 15 U.S.C. § 1602(aa), 1639; 12 C.F.R. § 226.32(a)(1).  The

17   Plaintiffs make no allegation that their loan had either an APR or points and fees that were high

18   enough to trigger the Unfair Lending Practices statute.

19   This Court should not permit the Plaintiffs' Unfair Lending Practices cause of action to

20   proceed, in the absence of any factual allegation that the statute even applied to them.  Multiple

21   decisions from this Court have dismissed Unfair Lending Practices claims where such allegations

22   are lacking.  See Reed v. Countrywide Bank, FSB, No. 2:09-cv-00319, slip op. at 7 (D. Nev. Mar.

23   23, 2009) (attached hereto as Exhibit 7) ("[P]laintiff fails to allege any facts that would support the

24   conclusion that the subject loan was a 'home loan' as defined by NRS 598D.040 or bring the loan

25   under the control of NRS Chapter 598D at all"); Gonzalez v. Home Am. Mortgage Corp., No.

26

27

28

Lewis and Roca LLP
3993 Howard Hughes Parkway
Suite 600
Las Vegas, Nevada 89169

536164.1

1  2:09-cv-00244, slip op. at 5-6 (D. Nev. Mar. 12, 2009) (attached hereto as Exhibit 8) (same).[5]

2  Plaintiffs thus fail to state a claim under the Unfair Lending Practices statute.[6]

3        The Unfair Lending Practices claim is also defective because the version of the statute in

4  effect when they sought financing was narrower in another way – in relevant part, it only restricted

5  making a loan "based solely upon the equity of the borrower in the home property." Nev. Rev.

6  Stat. § 598D.100.1(b) (2003).   This is quite different from Plaintiffs' characterization of the law

7  in its current form, as regulating lending that is not based on capacity to repay.  The Court should

8  dismiss the Third Claim for Relief for this reason as well.  See Reed v. Countrywide Bank, FSB,

9  No. 2:09-cv-00319, slip op. at 7 (D. Nev. Mar. 23, 2009) (dismissing ULPS claim; "plaintiff . . .

10  fails to allege any facts that indicate the decision to make the loan was 'based [solely] upon the

11  equity of the borrower in the home property'").

12        In addition, Plaintiffs fail to explain how the statute applies to Bank of America, who is

13  merely the successor by merger to LaSalle Bank NA as trustee for WaMu Mortgage Pass-Through

14  Certificates Series 2006-AR7.  Plaintiffs can prove no set of facts that would allow them relief

15  under NRS §598D, thus their first claim for relief should be dismissed.

16  **III.    THE INJUNCTIVE AND DECLARATORY RELIEF CLAIMS ARE NOT**
17          **INDEPENDENT CAUSES OF ACTION (FIRST AND SECOND CLAIMS)**

      Plaintiffs' First and Second Claims for Relief, which are captioned "Injunctive Relief" and

18  "Declaratory Relief," fail for two reasons.  First, as Judge Teilborg has recognized, both "claims"

19  are actually remedies, and not causes of action that state a legal claim.  In Re MERS MDL, MDL

20  No. 09-2119, slip op. at 8-9 (D. Ariz. Mar. 23, 2010).  For that reason alone, both "claims" should

21  be dismissed.  See also In re Wal-Mart Wage & Hour Employment Practices Litig., 490 F. Supp.

22  2d 1091, 1130 (D. Nev. 2007) (claim for "injunctive relief" was "not a separate cause of action"

---

[5] HOEPA claims have been dismissed on the same basis.  See Lynch v. RKS Mortgage Inc., 588 F. Supp.
25  2d 1254, 1260 (E.D. Cal. 2008) ("Plaintiffs' Complaint, however, does not allege any particular facts
showing that the percentage threshold for HOEPA protection was actually crossed in this case.  That failure
26  alone subjects the claim to dismissal."); Vaka v. Argent Mortgage Co., 2009 WL 1010844, *3 (N.D. Cal.
Apr. 14, 2009) (dismissing claim for failure to allege facts that loan was governed by HOEPA); Enriquez v.
27  J.P. Morgan Chase Bank, 2009 WL 160245, * 5 (D. Nev. Jan. 22, 2009) (same).

[6] The Plaintiffs could not plead a claim in any event:  the loan did not, in fact, exceed the APR or points
and fees thresholds, and so it was not a HOEPA loan.

and "not an independent ground for relief"); <u>Mamo v. BP P.L.C.</u>, 2006 WL 269056, at *3 (E.D. Va. Jan. 30, 2006) ("[I]njunctive relief is not a separate cause of action); <u>Akins v. Penobscot Nation</u>, 130 F.3d 482 (1st Cir. 1997); <u>Johnson v. D&D Home Loans Corp.</u>, 2007 WL 4355278 (E.D. Va. Dec. 6, 2007) (declaratory relief is a "remedy available . . . and not a separate cause of action").

Second, both the injunctive and declaratory relief "claims" are merely derivative of other substantive claims for relief which Plaintiffs assert. Compl. ¶¶ 53-61. Because Defendants have demonstrated above that Plaintiffs' fraud in the inducement and Unfair Lending Practices claims fail to state cognizable claims for relief, the derivative First and Second Claims for Relief also must be dismissed. <u>See</u> <u>Cervantes</u>, 2009 WL 3157160, at *12 (because none of the "substantive" claims stated a claim for relief, claims for injunctive and declaratory relief "must likewise fail").

## CONCLUSION

For the foregoing reasons, Defendant Bank of America, N.A respectfully requests that the Court grant this Motion and Dismiss Plaintiffs' First, Second, Third and Thirteenth Claims for Relief in Plaintiffs' Complaint, with prejudice.

DATED this 8TH day of June, 2010.

LEWIS AND ROCA LLP

By _____
J. CHRISTOPHER JORGENSEN, ESQ.
STATE BAR NO. 5382
3993 Howard Hughes Pkwy., Ste. 600
Las Vegas, NV 89169
Attorneys for Defendant Bank of America, N.A.

1

## CERTIFICATE OF SERVICE

2

3
I hereby certify that service on counsel of the foregoing document was made on the 8 day of June 2010, through the court's electronic service system to the following:

4

5
Rick Lawton, Esq.
5435 Reno Hwy. Box 1740
Fallon, NV 89406
Attorney for Plaintiffs

6

7
Robert R. Hager, Esq.
Hager & Hearne
245 E. Liberty Street, Ste. 110
Reno, NV 89501
Attorneys for Plaintiffs

8

9

10

11
Thomas P. Beko, Esq.
Erickson, Thorpe & Swainston, Ltd.
99 West Arroyo Street
Reno, NV 89509
Attorneys for Western Title Company, Inc.
and Western Exchange Services Corp.

12

13

Patrick G. Byrne, Esq.
Erica J. Stutman, Esq.
Snell & Wilmer LLP
3883 Howard Hughes Pkwy., Ste. 1100
Las Vegas, NV 89169
Attorneys for Mortgage Electronic Registration Systems, Inc.

David R. Hall, Esq.
Parsons Behle & Latimer
50 West Liberty Street, Ste. 750
Reno, NV 89501
Attorneys for California Reconveyance Company

14

15

16

an employee of Lewis and Roca LLP

17

18

19

20

21

22

23

24

25

26

27

28

Exhibit 1

# EXHIBIT 1

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA
RENO, NEVADA

JOSEPH GREEN, et al.,                )        3:09-CV-374-ECR-GWF
                                     )
                                     )
                                     )
                                     )        <u>Order</u>
                                     )
                                     )
      Plaintiffs,                    )
                                     )
vs.                                  )
                                     )
COUNTRYWIDE HOME LOANS INC., et.     )
al.,                                 )
                                     )
      Defendants.                    )
                                     )
                                     )

     This is a putative class action brought by numerous homeowners who are in danger of losing or have already lost their homes to foreclosure.  Before the Court are eighteen motions to dismiss (## 87, 116, 117, 118, 119, 120, 121, 122, 124, 125, 126, 127, 129, 130, 131, 132, 158, 223).  Also before the Court are Defendants' motion (#148) for a hearing and Plaintiffs' motion (#163) for leave to amend complaint.  The motions are ripe, and we now rule on them.

## I. Factual and Procedural History

     Plaintiffs in this case are homeowners who are in danger of losing or have already lost their homes to foreclosure.  Plaintiffs filed a class action complaint (#1) on July 10, 2009.  Between

1  August 4, 2009, and November 25, 2009, Defendants filed numerous
2  motions to dismiss (## 87, 116, 117, 118, 119, 120, 121, 122, 124,
3  125, 126, 127, 129, 130, 131, 132, 158, 223).  On September 4, 2009,
4  Plaintiffs opposed (#157) one of the motions (#87) to dismiss, but
5  withdrew several claims with respect to that Defendant.  Then, on
6  September 24, 2009, Plaintiffs filed (#163) a collective response to
7  Defendants' motions to dismiss and motion for leave to amend.  In
8  this document, Plaintiffs essentially concede that their initial
9  complaint was deficient and seek leave to address these
10 deficiencies.  Defendants have opposed (## 169, 171, 186, 189, 193
11 and 231) Plaintiffs' motion for leave to amend.

12      On August 27, 2009, Defendants National City Bank, National
13 City Mortgage, National City Corporation and PNC Financial Services
14 Group, Inc. filed a motion (#148) for a hearing in connection with
15 their motion to dismiss (#117).

16

17                        **II. Motions to Dismiss**

18      Plaintiffs have essentially conceded that their initial
19 complaint is deficient.  (See P.'s Response to Collective Motions to
20 Dismiss and Request for Leave to Amend at 3 (#163)("The facts have
21 not changed, but have been expanded to meet all the necessary
22 elements of a sufficient pleading under both _Twombley_ and _Iqbal_.").)
23 Nonetheless, we do not have authority to rule on all of the issues
24 raised by the pending motions to dismiss.  Under MDL Order No. 2119,
25 we have authority to rule only on claims or issues unrelated to the
26 formation and/or operation of the MERS system.  Pursuant to a
27 transfer order issued by the United States Judicial Panel on
28                                    2

1  Multidistrict Litigation, the claims in this case that are related

2  to the formation and/or operation of the MERS system are under the

3  jurisdiction of the District of Arizona and assigned to the

4  Honorable James A. Teilborg for coordinated or consolidated pretrial

5  proceedings.  (In Re: Mortgage Electronic Registration Systems

6  (MERS) Litigation, MDL No. 2119, Transfer Order (#227).)  This Order

7  is not intended to refer to or rule upon any issues which are

8  included in the MDL transfer order.  In light of Plaintiffs'

9  concession, the pending motions to dismiss will be granted in all

10  other respects.

11      We now turn to Plaintiffs' motion for leave to amend.

12

13                    **III.  Leave to Amend**

14      Under Rule 15(a) leave to amend is to be "freely given when

15  justice so requires."  FED. R. CIV. P. 15(a).  In general, amendment

16  should be allowed with "extreme liberality."  Owens v. Kaiser Found.

17  Health Plan, Inc., 244 F.3d 708, 712 (9th Cir. 2001) (quoting

18  Morongo Band of Mission Indians v. Rose, 893 F.2d 1074, 1079 (9th

19  Cir. 1990)).  If factors such as undue delay, bad faith, dilatory

20  motive, undue prejudice or futility of amendment are present, leave

21  to amend may properly be denied in the district court's discretion.

22  Eminence Capital, LLC v. Aspeon, Inc., 316 F.3d 1048, 1051-52 (9th

23  Cir. 2003)(discussing Foman v. Davis, 371 U.S. 178, 182 (1962).

24      It is not within our authority to rule on Plaintiffs' motion

25  for leave to amend with respect to claims related to the formation

26  and/or operation of the MERS system.  Plaintiffs must seek leave

27  from Judge Teilborg to amend those claims.

28                                   3

1      Plaintiffs assert only two claims for relief that are possibly

2  unrelated to the formation and operation of the MERS system —

3  wrongful foreclosure and unjust enrichment.  Because Plaintiff has

4  failed to state a claim for either cause of action, it would be

5  futile to allow Plaintiffs leave to amend.

6      A. Wrongful Foreclosure

7      The first claim for relief in Plaintiffs' proposed complaint is

8  wrongful foreclosure.  Under Nevada law, an action for the tort of

9  wrongful foreclosure will lie only "if the trustor or mortgagor can

10  establish that at the time the power of sale was exercised or the

11  foreclosure occurred, no breach of condition or failure of

12  performance existed on the mortgagor's or trustor's part which would

13  have authorized the foreclosure or exercise of the power of sale."

14  Collins v. Union Fed. Sav. & Loan Ass'n, 662 P.2d 610, 623 (Nev.

15  1983).

16      Plaintiffs do not allege that they were not in default on their

17  loans when foreclosures began.  Indeed, in the general allegations

18  of the proposed amended complaint, Plaintiffs state: "When the

19  borrower/Plaintiffs did not pay the payments agreed in the 'Note'

20  the unknown party caused a trustee to notice the obligor of the

21  default and intent to sell under Nevada law."  (Proposed Am. Compl.

22  ¶ 92 (#163-1).)  Plaintiffs thus concede the existence of a "breach

23  of condition" that "would have authorized the foreclosure or

24  exercise of the power of sale."  Collins, 662 P.2d at 623.  Though

25  Plaintiffs allege that their obligations were somehow discharged

26  when "the investors in the mortgage backed securities claims were

27  paid as a result of over-collateralization of the obligations and/or

28                                              4

1   credit default swaps and/or federal bailout funds, and other monies

2   paid to investors who owner the notes and obligations and/or to the

3   Defendants or bank holding companies who disbursed the monies,"

4   (Proposed Am. Compl. ¶ 113 (#163-1)), this allegation, even if it

5   were true, is not tantamount to an assertion that Plaintiffs' were

6   not in default on their mortgages.  Therefore, Plaintiffs fail to

7   state a claim for wrongful foreclosure.

8       As discussed above, we do not have authority to rule on claims

9   or issues related to the formation and/or operation of the MERS

10  system.  It is not entirely clear whether Plaintiffs' claim for

11  wrongful foreclosure falls within this definition, in part because

12  this cause of action appears to rely on several alternative

13  underlying legal theories.  For example, Plaintiffs allege that "no

14  true and no beneficiary under the deed of trust ever directed a sale

15  of any of the properties owned by Plaintiffs in which MERS is named

16  as beneficiary or nominee of the beneficiary/lender at issue in the

17  motion."  (Proposed Am. Compl. ¶ 116 (#163-1).)  We reiterate that

18  this Order is not intended to refer to or rule upon any issues which

19  are included in the MDL transfer order.  Nonetheless, in light of

20  the fact that Plaintiffs admit that they did not make the payments

21  agreed upon under the terms of their loans, this cause of action

22  fails regardless of which legal theory the claim is premised upon.

23      B. Unjust Enrichment

24      The second claim for relief in Plaintiffs' proposed complaint

25  is unjust enrichment.  Under Nevada law, unjust enrichment occurs

26  when "a person has and retains a benefit which in equity and good

27  conscience belongs to another."  Leasepartners Corp. v. Robert L.

28                                    5

1 | <u>Brooks Trust Dated November 12, 1975</u>, 942 P.2d 182, 187 (Nev. 1997).

2 | An action "based on a theory of unjust enrichment is not available

3 | when there is an express, written contract, because no agreement can

4 | be implied when there is an express agreement." <u>Id.</u> The doctrine

5 | of unjust enrichment thus only "applies to situations where there is

6 | no legal contract but where the person sought to be charged is in

7 | possession of money or property which in good conscience and justice

8 | he should not retain but should deliver to another [or should pay

9 | for]." <u>Id.</u> (quoting 66 Am. Jur. 2d Restitution § 11 (1973)).

10 |     The basic premise of Plaintiffs' claim for unjust enrichment is

11 | that they were "targeted for and lured" into their mortgages.

12 | (Proposed Am. Compl. ¶ 125 (#163-1).)  These mortgages are express

13 | and written contracts; the doctrine of unjust enrichment therefore

14 | does not apply.  Plaintiffs' proposed second claim for relief fails

15 | to state a claim, and will be dismissed.

16 |

17 |                     **III. Motion for a Hearing**

18 |     In light of this Order dismissing all of Plaintiffs' claims on

19 | which we have authority to rule under the MDL Order and denying

20 | Plaintiffs leave to amend, Defendants National City Bank, National

21 | City Mortgage, National City Corporation and PNC Financial Services

22 | Group, Inc.'s motion (#148) for a hearing in connection with their

23 | motion to dismiss (#117) is moot, and will be denied on that basis.

24 |

25 |                         **IV. Conclusion**

26 |     Defendants' motions to dismiss will be granted; Plaintiffs

27 | essentially concede that the Complaint is deficient.  Therefore, the

28 |

1 Complaint, to the extent it does not involve claims assigned to the

2 District of Arizona pursuant to the MDL order, will be dismissed.

3 Plaintiffs' motion for leave to file an amended complaint will be

4 denied on the grounds of futility; the proposed amended complaint

5 fails to state a claim upon which relief could be granted.

6 Defendants' motion for a hearing will be denied as moot.

7

8 **IT IS, THEREFORE, HEREBY ORDERED THAT** Defendants' Motions to Dismiss

9 (## 87, 116, 117, 118, 119, 120, 121, 122, 124, 125, 126, 127, 129,

10 130, 131, 132, 158, 223) are **GRANTED** on the following basis: We lack

11 jurisdiction over Plaintiffs' claims that were transferred to the

12 MDL; we thus do not rule on the motions to the extent they address

13 Plaintiffs' claims related to the formation and/or operation of the

14 MERS system.   The motions are granted with respect to Plaintiffs'

15 remaining claims for relief.

16

17 **IT IS FURTHER ORDERED THAT** Plaintiffs' motion (#163) for leave to

18 amend complaint is **DENIED**.

19

20 **IT IS FURTHER ORDERED THAT** Defendants National City Bank, National

21 City Mortgage, National City Corporation and PNC Financial Services

22 Group, Inc.'s motion (#148) for a hearing in connection with their

23 motion to dismiss is **DENIED** as moot.

24

25 DATED: January 11, 2010.

26

27 *Edward C. Reed.*
UNITED STATES DISTRICT JUDGE

28

7

Exhibit 2

# EXHIBIT 2

1

2

3

4                    UNITED STATES DISTRICT COURT
                         DISTRICT OF NEVADA
5                         RENO, NEVADA

6

7

JOSEFA LOPEZ, JOSE TRINIDAD CASAS, )        3:09-CV-180-ECR-VPC
8  MARIA C. CASAS, TYRONE EVENSON,   )
   MICHELLINA EVENSON, BRYAN GRAY,   )
9  HELEN GRAY, CHRIS PETERNEL, and   )
   PATRICK FRANKOSKI, individually   )
10 and on behalf of similarly        )
   situated individuals,             )
11                                   )
                                     )
12      Plaintiffs,                  )
                                     )
   vs.                               )        Order
13                                   )
                                     )
   EXECUTIVE TRUSTEE SERVICES, LLC.; )
14 COUNTRYWIDE HOME LOANS, INC., a   )
   New York corporation; RECONTRUST, )
15 MERSCORP, INC. a Virginia         )
   corporation; FEDERAL HOME LOAN    )
16 MORTGAGE CORPORATION, a Virginia  )
   corporation; FEDERAL NATIONAL     )
17 MORTGAGE ASSOCIATION, a District  )
   of Columbia corporation; GMAC     )
18 MORTGAGE, LLC, a Delaware         )
   corporation; NATIONAL CITY        )
19 MORTGAGE, a foreign company and a )
   division of NATIONAL CITY BANK, a )
20 subsidiary of National City       )
   Corporation; NATIONAL CITY        )
21 CORPORATION, a Delaware           )
   corporation and a subsidiary of   )
22 PNC Financial Services, Inc.; PNC )
   FINANCIAL SERVICES, INC, a        )
23 Pennsylvania corporation; J.P.    )
   MORGAN CHASE BANK, N.A., a New    )
24 York corporation; CITIMORTGAGE,   )
   INC., a New York corporation; HSBC)
25 MORTGAGE CORPORATION, U.S.A., a   )
   Delaware corporation, AIG UNITED  )
26 GUARANTY CORPORATION, a foreign   )
   corporation; WELLS FARGO BANK,    )
27 N.A., a California corporation,    )
   dba WELLS FARGO HOME EQUITY and   )
28 dba WELLS FARGO HOME MORTGAGE,     )

```
1   a division of WELLS FARGO BANK,      )
    N.A., a California Corporation;       )
2   WELLS FARGO dba AMERICAS SERVICING    )
    CO., NATIONAL DEFAULT SERVICING.      )
3   CO., BANK OF AMERICA, N.A., a         )
    Delaware corporation, and GE MONEY    )
4   BANK, an Ohio corporation; CAPITAL    )
    ONE dba CHEVY CHASE BANK, GALE        )
5   GROUP dba TD FINANCIAL SERVICE CO.    )
    dba TD SERVICE COMPANY, JOHN AND      )
6   JANE DOES I-X; BLACK AND WHITE        )
    PARTNERSHIP I-X; AND ABC              )
7   CORPORATION I-X;                      )
                                          )
8            Defendants.                  )
                                          )
9                                         )
```

10

11       This is a putative class action brought by numerous homeowners

12  who are in danger of losing or have already lost their homes to

13  foreclosure.  Plaintiffs assert ten claims for relief: (1) violation

14  of the Fair Housing Act; (2) violation of Fair Debt Collection

15  Practices Act (3) violation of Nevada Uniform Lending Practices Act;

16  (4) conspiracy to commit fraud and conversion; (5) conspiracy to

17  commit fraud related to the MERS system; (6) unjust enrichment; (7)

18  intentional infliction of emotional distress; and (8) fraud in the

19  inducement.  Before the Court are twelve motions to dismiss (## 148,

20  153, 156, 163, 165, 167, 168, 170, 172, 174, 179 and 312).

21  Plaintiffs oppose each motion separately.  Defendants have replied.

22  Also before the Court are various other miscellaneous motions.  The

23  motions are ripe, and we now rule on them.

24

25                  **I. Factual and Procedural History**

26       Plaintiffs in this case are homeowners who are in danger of

27  losing or have already lost their homes to foreclosure.  Plaintiffs

28

1  filed a class action complaint (#1) on April 8, 2009.  On April 17,

2  2009, Plaintiffs filed a motion (#15) for temporary restraining

3  order.  On May 4, 2009, Plaintiffs filed a second motion (#36) for

4  temporary restraining order.  On May 4, 2009, Plaintiffs filed an

5  amended complaint (#35).  On May 5, 2009, we granted (#41)

6  Plaintiffs' motion (#36) for a temporary restraining order to the

7  extent it sought a temporary restraining order.  On May 22, 2009,

8  Plaintiffs filed a third motion (#75) for preliminary injunction and

9  a motion (#77) for class certification.  On August 21, 2009,

10  Defendants filed a motion (#308) for leave to file opposition to

11  Plaintiffs' motion for preliminary injunction and motion for class

12  certification.  On August 21, 2009, Defendants filed a motion (#314)

13  to strike certain affidavits in support of Plaintiffs' motion for

14  preliminary injunction and class certification.  On August 24, 2009,

15  Defendants filed a motion (#330) for argument in connection with

16  Plaintiffs' motion for preliminary injunction.

17       Between June 23, 2009, and August 21, 2009, Defendants filed

18  numerous motions to dismiss (## 148, 153, 156, 163, 165, 167, 168,

19  170, 172, 174, 179 and 312).  Plaintiffs opposed the motions, and

20  Defendants replied.  Defendants have filed several motions (## 154,

21  164, 175 and 180) for hearings in connection with their pending

22  motions to dismiss.  In addition, on August 8, 2009, Defendants

23  filed a motion (#385) to accelerate the pending motions to dismiss.

24       On August 21, 2009, the Federal Housing Finance Agency ("FHFA")

25  filed a motion (#310) to intervene as conservator for Fannie Mae and

26  Freddie Mac.  On October 29, 2009, Defendants requested (#401) a

27  review of the magistrate judge's decision regarding a pre-trial

28

1  matter.  On December 9, 2009, the United States Judicial Panel on

2  Multidistrict Litigation issued a transfer order (#415),

3  transferring this case to the District of Arizona and assigning it

4  to the Honorable James A. Teilborg for coordinated or consolidated

5  pretrial proceedings.  The claims unrelated to the formation and/or

6  operation of the so-called MERS system were remanded to us.

7

8                    **II. Motion to Dismiss Standard**

9       A motion to dismiss under Fed. R. Civ. P. 12(b)(6) will only be

10 granted if the complaint fails to "state a claim to relief that is

11 plausible on its face."  Bell Atl. Corp. v. Twombly, 550 U.S. 544,

12 570 (2007).  On a motion to dismiss, "we presum[e] that general

13 allegations embrace those specific facts that are necessary to

14 support the claim."  Lujan v. Defenders of Wildlife, 504 U.S. 555,

15 561 (1992) (quoting Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 889

16 (1990)) (alteration in original).  Moreover, "[a]ll allegations of

17 material fact in the complaint are taken as true and construed in

18 the light most favorable to the non-moving party."  In re Stac

19 Elecs. Sec. Litig., 89 F.3d 1399, 1403 (9th Cir. 1996) (citation

20 omitted).

21      Although courts generally assume the facts alleged are true,

22 courts do not "assume the truth of legal conclusions merely because

23 they are cast in the form of factual allegations."  W. Mining

24 Council v. Watt, 643 F.2d 618, 624 (9th Cir. 1981).  Accordingly,

25 "[c]onclusory allegations and unwarranted inferences are

26 insufficient to defeat a motion to dismiss."  In re Stac Elecs., 89

27 F.3d at 1403 (citation omitted).

28                                    4

1    Review on a motion pursuant to Fed. R. Civ. P. 12(b)(6) is
2  normally limited to the complaint itself.  See Lee v. City of L.A.,
3  250 F.3d 668, 688 (9th Cir. 2001).  If the district court relies on
4  materials outside the pleadings in making its ruling, it must treat
5  the motion to dismiss as one for summary judgment and give the non-
6  moving party an opportunity to respond.  Fed. R. Civ. P. 12(d);
7  see United States v. Ritchie, 342 F.3d 903, 907 (9th Cir. 2003).  "A
8  court may, however, consider certain materials — documents attached
9  to the complaint, documents incorporated by reference in the
10 complaint, or matters of judicial notice — without converting the
11 motion to dismiss into a motion for summary judgment."  Ritchie, 342
12 F.3d at 908.

13    If documents are physically attached to the complaint, then a
14 court may consider them if their "authenticity is not contested" and
15 "the plaintiff's complaint necessarily relies on them."  Lee, 250
16 F.3d at 688 (citation, internal quotations, and ellipsis omitted).
17 A court may also treat certain documents as incorporated by
18 reference into the plaintiff's complaint if the complaint "refers
19 extensively to the document or the document forms the basis of the
20 plaintiff's claim."  Ritchie, 342 F.3d at 908.  Finally, if
21 adjudicative facts or matters of public record meet the requirements
22 of Fed. R. Evid. 201, a court may judicially notice them in deciding
23 a motion to dismiss.  Id. at 909; see Fed. R. Evid. 201(b) ("A
24 judicially noticed fact must be one not subject to reasonable
25 dispute in that it is either (1) generally known within the
26 territorial jurisdiction of the trial court or (2) capable of
27
28                                   5

1  accurate and ready determination by resort to sources whose accuracy
2  cannot reasonably be questioned.").

3

4  ### III. Analysis

5  #### A. Fair Housing Act

6      The first cause of action alleged in Plaintiffs' first amended
7  complaint pertains only to Plaintiffs Josepha Lopez, Jose Casas,
8  Maria Casas and Tyrone Evenson.   The complaint alleges that all
9  Defendants targeted these Plaintiffs because of their race, national
10 origin, gender and disability status and offered them, a "less-than-
11 favorable loan than would have been offered to a white borrower or a
12 male borrower, all other things being equal."   (Am. Compl. ¶ 122
13 (#35).)

14     The Fair Housing Act ("FHA") prohibits discrimination "against
15 any person in the terms, conditions, or privileges of sale or rental
16 of a dwelling, or in the provision of services or facilities in
17 connection therewith, because of race, color, religion, sex,
18 familial status, or national origin."  42 U.S.C. § 3604(b).  The FHA
19 has a two year statute of limitations.  Id. § 3613(a)(1)(A).

20     Plaintiffs' FHA claim is untimely.  The conduct giving rise to
21 this claim is the issuance of "less-than-favorable loan[s]."   (Am.
22 Compl. ¶ 122 (#22).)  The loans in question were issued to
23 Plaintiffs on the following dates: Josepha Lopez's loan was issued
24 on October 26, 2005; Jose and Maria Casas' loan was issued on May
25 25, 2006; Tyrone Evanson's loan was issued on October 26, 2006.
26 (Id. ¶¶ 60, 75, 90 (#35).)  The statute of limitations thus began
27 running on those dates and expired on October 26, 2007, May 25, 2008

28                                      6

1   and October 26, 2008, respectively. Plaintiffs did not file this

2   lawsuit until April 8, 2009.  Even if we assume that Defendants'

3   actions violated the FHA, because Plaintiffs filed this action under

4   the FHA more than two years after the alleged discriminatory acts,

5   the claim is time-barred.

6        Plaintiffs' allegation that Defendants "continue to target"

7   Plaintiffs "and others similarly situated"  (Id. ¶ 119, 120, 121

8   (#35)) does not cure the untimeliness of Plaintiffs' claim.  Under

9   the continuing violation theory, when "a plaintiff, pursuant to the

10  Fair Housing Act, challenges not just one incident of conduct

11  violative of the Act, but an unlawful practice that continues into

12  the limitations period, the complaint is timely when it is filed

13  within [the statutory period] of the last asserted occurrence of

14  that practice." Havens Realty Corp. v. Coleman, 455 U.S. 363,

15  380-81 (1982).  The continuing violation theory is not applicable

16  here because Plaintiffs each claim to have suffered only a single

17  incident of conduct violative of the Act, namely the "less-than-

18  favorable loan."  Moreover, Plaintiffs' allegation regarding the

19  continuation of Defendants conduct is unsupported by any factual

20  allegations and, as such, is not a plausible claim for a continuing

21  violation.  See In re Stac Elecs., 89 F.3d at 1403 (citation

22  omitted).  Plaintiffs' first cause of action thus fails to state a

23  claim and will be dismissed.

24       B. Fair Debt Collection Practices Act

25       Plaintiffs allege that seven defendants violated the Fair Debt

26  Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692-1692o.  Under

27  the FDCPA, "[a] debt collector may not use unfair or unconscionable

28                                    7

1 means to collect or attempt to collect any debt." 15 U.S.C. §

2 1692f. "Unfair or unconscionable" is defined to include "[t]he

3 collection of any amount (including any interest, fee, charge or

4 expense incidental to the principal obligation) unless such amount

5 is expressly authorized by the agreement creating the debt or

6 permitted by law." 15 U.S.C. § 1692f(1).

7        Plaintiffs' FDCPA claim is too vague to survive a motion to

8 dismiss.  Plaintiffs name seven Defendants under this claim, but

9 fail to identify which Defendant engaged in what conduct with

10 respect to which Plaintiff.  Allegations that fail to identify which

11 defendant is responsible for what alleged injury do not adequately

12 place defendants on notice of the claim or claims being asserted

13 against them.  See Fortaleza v. PNC Fin. Servs. Group, Inc., 642 F.

14 Supp. 2d 1012, 1022 (N.D. Cal. 2009).

15        In addition, to the extent that this claim is premised on

16 Defendants' activities in pursuit of foreclosure, this cause of

17 action fails.  (See e.g. Am. Compl. ¶ 137 (alleging that "Defendants

18 published written notice in the newspaper of general circulation in

19 Washoe County that the property belonging to the Plaintiffs is in

20 foreclosure, and knowingly falsely stated that those Defendants were

21 the proper parties to initiate foreclosure")(#35).)  Foreclosure

22 pursuant to a deed of trust does not constitute debt collection

23 under the RFDCPA.  Hulse v. Ocwen Fed. Bank, FSB, 195 F. Supp. 2d

24 1188, 1204 (D. Or. 2002); Izenberg v. ETS Servs., LLC, 589 F. Supp.

25 2d 1193 (C.D. Cal. 2008).  See also Heinemann v. Jim Walter Homes,

26 Inc.,47 F. Supp. 2d 716, 722 (N.D.W. Va. 1998)(noting that

27 "publication of the notice of sale and the final trustees sale" of a

28                                        8

1  mortgaged property was not collection of a debt, and thus not within
2  the scope of the FDCPA).

3      Thus, Plaintiffs' claim under the FDCPA will be dismissed.
4  Should Plaintiffs wish to file an amended complaint under the FDCPA
5  unrelated to Defendants' activities in pursuit of foreclosure, they
6  shall identify which Defendants engaged in what conduct with respect
7  to which Plaintiffs.

8      C. Unfair Lending Practices

9      Plaintiffs allege that all Defendants violated Nev. Rev. Stat.
10  § 598D.100 by continuing "to enforce mortgages secured by
11  Plaintiffs' homes that included no evaluation of any commercially
12  reasonable means or mechanisms that would demonstrate the
13  Plaintiffs' capacity to repay . . . ." (Am. Compl. ¶ 143 (#35).)
14  Defendants have moved to dismiss this claim on various grounds.
15  Some argue that they are not lenders and thus they do not fall
16  within the purview of the statute.  Others argue that the claim is
17  too vague and conclusory to survive a motion to dismiss.  Still
18  others argue that the version of the statute that Plaintiffs allege
19  they violated was not in force until October 1, 2007, and there is
20  no provision for its retroactive application.  Thus, these
21  provisions cannot apply to those Plaintiffs' loans, which were
22  obtained before that date.

23      We do not reach Defendants' arguments with respect to
24  Defendants' status as lenders or the version of the statute in force
25  at the times of the loans in question because Plaintiffs' third
26  cause of action is too vague to survive a motion to dismiss.
27  Plaintiffs assert the unfair lending practices claim against all
28

9

1  Defendants, alleging that they collectively "enforced" mortgages
2  that "included no evaluation of any commercially reasonable means or
3  mechanism that would demonstrate the Plaintiffs' capacity to repay,
4  especially since Plaintiffs had no income at the time of
5  application, or no verified income or no stated income . . . ."
6  (Am. Compl. ¶ 143 (#35).)   Section 598D.100 proscribes certain
7  lending practices; it does not regulate the enforcement of loans.
8  Indeed, the statute applies only to lenders.   Nᴇᴠ. Rᴇᴠ. Sᴛᴀᴛ. §
9  598D.100.   "Lender" is defined as "a mortgagee, beneficiary of a
10 deed of trust or other creditor who holds a mortgage, deed of trust
11 or other instrument that encumbers home property as security for the
12 repayment of a home loan."   Id. § 598D.050.   Claims that fail to
13 identify which defendant is responsible for what alleged injury do
14 not adequately place defendants on notice of the claim or claims
15 being asserted against them.   See Fortaleza, 642 F. Supp. 2d at
16 1022.

17     The assertion of this claim against all Defendants has caused a
18 great deal of confusion.   Many non-lender Defendants have expended
19 resources filing motions to dismiss on that ground.   Plaintiffs,
20 unable to defend this claim as to many of these Defendants, have
21 already withdrawn the claim with respect to some of them.   While it
22 is helpful that Plaintiffs have withdrawn the claim as to some
23 Defendants, it is nonetheless inappropriate to allege a claim
24 broadly against all Defendants without a legal basis for doing so.
25
26
27
28                          10

1      D. Conspiracy to Commit Fraud and Conversion

2          Plaintiffs' fourth claim for relief alleges that all Defendants

3   engaged in a conspiracy to "deprive Plaintiffs of their property

4   through fraud and misrepresentation that would result in Plaintiffs

5   entering into loan agreements for which they were ultimately not

6   qualified and which would eventually result in Plaintiffs' inability

7   to make payments and stay in their homes."   (Am. Compl. ¶ 153

8   (#35).)   Under Nevada law, an actionable civil conspiracy-to-defraud

9   claim exists when there is (1) a conspiracy agreement; (2) an overt

10  act of fraud in furtherance of the conspiracy; and (3) resulting

11  damages to the plaintiff.   Jordan v. State ex rel. Dept. of Motor

12  Vehicles and Pub. Safety, 110 P.3d 30, 51 (Nev. 2005).   "Thus, an

13  underlying cause of action for fraud is a necessary predicate to a

14  cause of action for conspiracy to defraud."   Id.   A showing of

15  fraud, in turn, requires (1) a false representation, (2) knowledge

16  or belief that the representation was false, (3) intent to induce

17  reliance on the representation, (4) that the reliance must be

18  justifiable, and (5) damages.   Lubbe v. Barba, 540 P.2d 115, 117

19  (Nev. 1975).

20          A claim for conspiracy to commit fraud must be pled with the

21  same particularly as the fraud itself.   See Wanetick v. Mel's of

22  Modesto, Inc., 811 F. Supp. 1402, 1406 n.3 (N.D. Cal. 1992)(so

23  stating).   Thus, under Rule 9(b), a party must state with

24  particularity the circumstances constituting the conspiracy.   See

25  FED. R. CIV. P. 9(b).   Allegations of conspiracy must be accompanied

26  by "the who, what, when, where, and how of the misconduct charged."

27

28                                    11

1  See Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1106 (9th Cir.
2  2003)(so stating, with respect to fraud)(internal quotation marks
3  omitted).  Thus, to state a claim for conspiracy "a plaintiff must
4  allege with sufficient factual particularity that defendants reached
5  some explicit or tacit understanding or agreement.  It is not enough
6  to show that defendants might have had a common goal unless there is
7  a factually specific allegation that they directed themselves
8  towards this wrongful goal by virtue of a mutual understanding or
9  agreement."  S. Union Co. v. Sw. Gas Corp., 165 F. Supp. 2d 1010,
10  1020-21 (D. Ariz. 2001)(internal citations and quotation marks
11  omitted).

12       Plaintiffs have failed to plead the alleged conspiracy to
13  commit fraud with particularity.  Plaintiffs have not stated how or
14  even when the alleged conspiracy was formed.  Plaintiffs have not
15  included any factual allegations pertaining to how Defendants
16  targeted Plaintiffs.  In addition, the Complaint lumps multiple
17  Defendants together without differentiating between them or the
18  allegations against them.  See Swartz v. KPMG LLP, 476 F.3d 756, 764
19  (9th Cir. 2007) (noting that "Rule 9(b) does not allow a complaint
20  to merely lump multiple defendants together").  Such general
21  allegations are insufficient because "[a] bare allegation of a
22  conspiracy is almost impossible to defend against, particularly
23  where the defendants are large institutions with hundreds of
24  employees entering into contracts and agreements daily."  Kendall v.
25  Visa U.S.A., Inc., 518 F.3d 1042, 1047 (9th Cir. 2008).
26
27
28                              12

1        With regard to the underlying fraud, the complaint fails to
2   specify what false representations underlie the claim.  Plaintiffs'
3   allegation that "Defendants . . . acted in a concerted manner to
4   target Plaintiffs as borrowers, to misrepresent the loan terms
5   and/or to misrepresent Plaintiffs' qualification for the loans,"
6   (Am. Compl. ¶ 161 (#35)) is insufficient under Rule 9(b).
7        Finally, it should be noted that the title of Plaintiffs'
8   fourth claim for relief is "Conspiracy to Commit Fraud and
9   Conversion." (Am. Compl. at 30 (#35).)  The substance of this
10  claim's allegations focuses on the fraud underlying the alleged
11  conspiracy, not conversion.  Nonetheless, to the extent the claim is
12  also premised on the underlying tort of conversion, Plaintiffs
13  likewise fail to state a claim.  Conversion, under Nevada law, "is a
14  distinct act of dominion wrongfully exerted over personal property."
15  Edwards v. Emperor's Garden Restaurant, 130 P.3d 1280, 1287 (Nev.
16  2006).  In this case, Plaintiffs are alleging that Defendants
17  conspired to "unlawfully deprive plaintiffs of their homes."  (Am.
18  Compl. ¶ 160 (#35).)  Thus, the subject of the alleged conversion is
19  real property, not personal property.  Therefore, to the extent the
20  conspiracy claim is premised on the underlying tort of conversion,
21  Plaintiffs fail to state a claim.  Plaintiffs' fourth claim for
22  relief will be dismissed.
23       E. Conspiracy to Commit Fraud Related to the MERS system
24       Plaintiffs' fifth claim for relief alleges a conspiracy to
25  commit fraud related to the MERS system.  Pursuant to a transfer
26  order issued by the United States Judicial Panel on Multidistrict
27
28                                13

1   Litigation, the claims in this case that are related to the
2   formation and/or operation of the MERS system are under the
3   jurisdiction of the District of Arizona and assigned to the
4   Honorable James A. Teilborg for coordinated or consolidated pretrial
5   proceedings.  (In Re: Mortgage Electronic Registration Systems
6   (MERS) Litigation, MDL No. 2119, Transfer Order (#415).)  Thus, we
7   will not rule on the pending motions to dismiss with regard to
8   Plaintiffs' fifth claim for relief alleging conspiracy to commit
9   fraud related to the MERS system.

10      F. Unjust Enrichment

11      Plaintiffs' sixth claim for relief alleges unjust enrichment
12   against all Defendants.  Under Nevada law, unjust enrichment occurs
13   when "a person has and retains a benefit which in equity and good
14   conscience belongs to another."  Leasepartners Corp. v. Robert L.
15   Brooks Trust Dated November 12, 1975, 942 P.2d 182, 187 (Nev. 1997).
16   An action "based on a theory of unjust enrichment is not available
17   when there is an express, written contract, because no agreement can
18   be implied when there is an express agreement."  Id.  The doctrine
19   of unjust enrichment thus only "applies to situations where there is
20   no legal contract but where the person sought to be charged is in
21   possession of money or property which in good conscience and justice
22   he should not retain but should deliver to another [or should pay
23   for]."  Id. (quoting 66 Am. Jur. 2d Restitution § 11 (1973)).

24      The basic premise of Plaintiffs' claim for unjust enrichment is
25   that they were "targeted for and lured" into their mortgages.  (Am.

26
27
28                                14

1   Compl. ¶ 177 (#35).)   These mortgages are express and written

2   contracts; Plaintiffs' sixth claim thus fails and will be dismissed.

3          G. Intentional Infliction of Emotional Distress

4       Plaintiffs' seventh cause of action alleges intentional

5   infliction of emotional distress.   The elements of a cause of action

6   for intentional infliction of emotional distress are "(1) extreme

7   and outrageous conduct with either the intention of, or reckless

8   disregard for, causing emotional distress, (2) the plaintiff's

9   having suffered severe or extreme emotional distress and (3) actual

10   or proximate causation." Dillard Dept. Stores, Inc. v. Beckwith,

11   989 P.2d 882, 886 (Nev. 1999).   Extreme and outrageous conduct is

12   that which is "outside all possible bounds of decency and is

13   regarded as utterly intolerable in a civilized community." Maduike

14   v. Agency Rent-A-Car, 953 P.2d 24, 26 (Nev. 1998)(internal quotation

15   marks and citation omitted).   "Severe or extreme emotional distress"

16   is distress "so severe and of such intensity that no reasonable

17   person could be expected to endure it." Alam v. Reno Hilton Corp.,

18   819 F. Supp. 905, 911 (D. Nev. 1993).   A claim for intentional

19   infliction of emotional distress operates on a continuum: the less

20   extreme the outrage, the greater the need for evidence of physical

21   injury or illness from the emotional distress. Chowdhry v. NLVH,

22   Inc., 851 P.2d 459, 462 (Nev. 1993)

23       Neither the actions allegedly carried out by Defendants nor the

24   distress allegedly suffered by Plaintiffs is sufficient to state a

25   claim for intentional infliction of emotional distress.   The alleged

26   actions underlying this claim are, inter alia, misrepresentation of

27

28                      15

1  the loans at issue, negotiation of those loans and the closing of

2  the loans.   Plaintiffs argue that Defendants actions are extreme and

3  outrageous because Plaintiffs were particularly vulnerable to

4  predatory lending practices and the loans at issue concerned

5  Plaintiffs' residences.   Neither of these circumstances, even if

6  true, transforms the alleged conduct into conduct that is "utterly

7  intolerable in a civilized community."  Maduike, 953 P.2d at 26.

8  Moreover, the only physical symptoms of distress allegedly suffered

9  by Plaintiffs are sleeplessness and headaches.   (Am. Compl. ¶ 185

10  (#35).)   This distress is not so severe that "no reasonable person

11  could be expected to endure it."  Alam, 819 F. Supp. at 911.

12  Plaintiffs' claim for intentional infliction of emotional distress

13  thus fails to state a claim.

14       H. Fraud in the Inducement

15       Plaintiffs' eighth claim for relief is for fraud in the

16  inducement.   Like Plaintiffs' claim for conspiracy to commit fraud

17  and conversion, this claim fails to satisfy the particularity

18  requirements of Rule 9(b).   Federal Rule of Civil Procedure 9(b)

19  requires that a complaint "must state with particularity the

20  circumstances constituting fraud or mistake."  FED. R. CIV. P. 9(b).

21  Rule 9(b) "requires . . . an account of the time, place, and

22  specific content of the false representations as well as the

23  identities of the parties to the misrepresentations."  Swartz, 476

24  F.3d at 764 (internal quotation marks and citation omitted).   In a

25  case with multiple defendants, "Rule 9(b) does not allow a complaint

26  to merely lump multiple defendants together but requires plaintiffs

27

28                                    16

1  to differentiate their allegations when suing more than one
2  defendant and inform each defendant separately of the allegations
3  surrounding his alleged participation in the fraud." Id. at 764-65
4  (internal quotation marks and citation omitted).  Plaintiffs' claim
5  for fraud in the inducement fails to allege who made what
6  misrepresentations or when any of the alleged misrepresentation took
7  place.  The claim is replete with vague and conclusory allegations
8  such as "Defendants misrepresented the ability of Plaintiffs, and
9  other similarly situated, to qualify for the loans."  (Am. Compl. ¶
10 190 (#35).)

11      To the extent that Plaintiffs' fraud in the inducement claim is
12 based on omissions by Defendants, the Complaint also fails to state
13 a claim.  Under Nevada law, one of the five essential elements of a
14 claim for fraudulent concealment is that the "defendant must have
15 been under a duty to disclose the fact to the plaintiff." Nev.
16 Power Co. v. Monsanto Co., 891 F. Supp. 1406, 1415 (D. Nev. 1995).
17 Plaintiffs do not allege what duties, if any, the various Defendants
18 named in the Complaint owed Plaintiffs.  Plaintiffs' claim for fraud
19 in the inducement thus fails.

20

21               IV.  Leave to Amend
22      Under Rule 15(a) leave to amend is to be "freely given when
23 justice so requires." FED. R. CIV. P. 15(a).  In general, amendment
24 should be allowed with "extreme liberality."  Owens v. Kaiser Found.
25 Health Plan, Inc., 244 F.3d 708, 712 (9th Cir. 2001) (quoting
26 Morongo Band of Mission Indians v. Rose, 893 F.2d 1074, 1079 (9th

27

28                          17

1  Cir. 1990)).  If factors such as undue delay, bad faith, dilatory

2  motive, undue prejudice or futility of amendment are present, leave

3  to amend may properly be denied in the district court's discretion.

4  Eminence Capital, LLC v. Aspeon, Inc., 316 F.3d 1048, 1051-52 (9th

5  Cir. 2003)(discussing Foman v. Davis, 371 U.S. 178, 182 (1962).

6        In light of the liberal spirit of Rule 15(a), Plaintiffs should

7  have an opportunity to amend their complaint.  There is no reason

8  why Plaintiffs could not cure the deficiencies we have noted here,

9  or at least some of them, such as the conclusory and vague

10  allegations against undifferentiated defendants.  If the amended

11  complaint is similarly deficient, however, we may be forced to

12  conclude that leave to further amend would be futile.

13

14                    **V. Other Pending Motions**

15        In light of this Order dismissing all of Plaintiffs' claims on

16  which we have authority to rule under the MDL Order, Plaintiffs'

17  motion (#77) for class certification, motion (#15) for temporary

18  restraining order and third motion (#75) for preliminary injunction

19  are moot, and will be denied on that basis.  Likewise, Defendants'

20  motion (#308) for leave to file opposition to Plaintiffs' motion for

21  preliminary injunction and motion for class certification and motion

22  (#330) for argument in connection with Plaintiffs' motion for

23  preliminary injunction are moot and will be denied.  Defendants'

24  motions for hearings (## 154, 164, 175 and 180) in connection with

25  their pending motions to dismiss are also moot, as is Defendants'

26

27

28                              18

1  motion (#385) to accelerate consideration of the pending motions to

2  dismiss.

3      Defendants' request (#401) for review of magistrate judge

4  decision and motion (#314) to strike certain affidavits in support

5  of Plaintiffs' motion for preliminary injunction and class

6  certification are also moot, and will be denied on that basis.

7      The Federal Housing Finance Agency's ("FHFA"") motion (#310) to

8  intervene as conservator for Fannie Mae and Freddie Mac will be

9  granted.   Under 12 U.S.C. § 4617(b)(2)(A)(1) the FHFA  succeeded to

10  all rights, titles, powers, and privileges of Fannie Mae and Freddy

11  Mac, giving FHFA a right to intervene in this matter.

12      Our dismissal of Plaintiffs' motion for class certification

13  (#77) does not conflict with the Ninth Circuit's recent decision in

14  United Steel, Paper & Forestry, Rubber, Mfg. Energy, Allied Indus. &

15  Serv. Workers  United Steel, Paper & Forestry, Rubber, Mfg. Energy,

16  Allied Indus. & Serv. Workers Intern. Union, AFL-CIO, CLC v.

17  ConocoPhillips Co., Nos. 09-56578, 09-56579, 2010 WL 22701 (9th Cir.

18  Jan. 6, 2010).   In that case, the Ninth Circuit held that a district

19  court abused its discretion when it assumed, for the purpose of

20  Federal Rule of Civil Procedure 23 certification analysis and

21  without any separate inquiry into the merits, that plaintiffs' legal

22  theory would fail.   Id. at *1.   Unlike the posture in United Steel,

23  here, in addition to a motion for class certification, a number of

24  motions to dismiss are before the Court.   Our inquiry into the

25  merits of Plaintiffs' claims was conducted solely with respect to

26  the pending motions to dismiss.   Our ultimate conclusion with

27

28                                    19

1  respect to those motions renders Plaintiffs' motion for class
2  certification moot.  In light of the circumstances of this action,
3  it is therefore appropriate for this Court to enter an Order
4  dismissing the non-MDL claims without first ruling on the motion for
5  class certification.

6

7                    **VI. Conclusion**

8       Plaintiffs have failed to state a claim upon which relief can
9  be granted.  The Complaint, to the extent it does not involve claims
10 assigned to the District of Arizona pursuant to the MDL order, will
11 be dismissed.  Plaintiffs will be given leave to amend.  Should they
12 choose to do so, however, they shall specify which allegations apply
13 to which Defendants and which Plaintiffs.  Motions ## 15, 75, 77,
14 154, 164, 175, 180, 308, 314, 330, 385 and 401 are moot and will be
15 denied on that basis.  FHFA's motion (#310) to intervene as
16 conservator for Fannie Mae and Freddie Mac will be granted.  Under
17 12 U.S.C. § 4617(b)(2)(A)(1) the FHFA has a right to intervene in
18 this matter.

19

20 **IT IS, THEREFORE, HEREBY ORDERED THAT** Defendants' Motions to Dismiss
21 (## 148, 153, 156, 163, 165, 167, 168, 170, 172, 174, 179 and 312),
22 which are joined by documents ## 169, 177 and 178, are **GRANTED** on
23 the following basis: We lack jurisdiction over Plaintiffs' claims
24 that were transferred to the MDL; we thus do not rule on the motions
25 to the extent they address Plaintiffs' claims related to the
26 formation and/or operation of the MERS system.  The motions are

27

28                              20

1 granted with respect to Plaintiffs' remaining claims for relief.

2 Plaintiff shall have 21 days within which to file an amended

3 complaint addressing the deficiencies discussed here.  It is not

4 within our authority to grant Plaintiffs' leave to amend with

5 respect to claims before the MDL.

6

7 **IT IS FURTHER ORDERED THAT** Plaintiffs' Motion for Temporary

8 Restraining Order (#15) is **DENIED** as moot.

9

10 **IT IS FURTHER ORDERED THAT** Plaintiffs' Third Motion for Preliminary

11 Injunction (#75) is **DENIED** as moot.

12

13 **IT IS FURTHER ORDERED THAT** Plaintiffs' Motion to Certify Class (#77)

14 is **DENIED** as moot.

15

16 **IT IS FURTHER ORDERED THAT** Defendants' Motion (#154) for Hearing is

17 **DENIED** as moot.

18

19 **IT IS FURTHER ORDERED THAT** Defendants' Motion (#164) for Hearing is

20 **DENIED** as moot.

21

22 **IT IS FURTHER ORDERED THAT** Defendants' Motion (#175) for Hearing is

23 **DENIED** as moot.

24

25 **IT IS FURTHER ORDERED THAT** Defendants' Motion (#180) for Hearing is

26 **DENIED** as moot.

27

28                                      21

1  IT IS FURTHER ORDERED THAT Defendants' Motion (#308) for Leave to

2  File Opposition to Plaintiffs' Motion for Preliminary Injunction and

3  Motion for Class Certification is DENIED as moot.

4

5  IT IS FURTHER ORDERED THAT Defendants' Motion (#310) to intervene is

6  GRANTED.

7

8  IT IS FURTHER ORDERED THAT Defendants' Motion (#314) to Strike

9  Garfield Affidavits in support of Plaintiffs' Motions for

10 Preliminary Injunction and Class Certification, which is joined by

11 documents ## 315, 316, 332 and 336, is DENIED as moot.

12

13 IT IS FURTHER ORDERED THAT Defendants' Motion (#330) re [304]

14 Response to Motion, Request for Oral Argument is DENIED as moot.

15

16 IT IS FURTHER ORDERED THAT Defendants' Motion (#385) for Accelerated

17 Consideration of Pending Motions to Dismiss and Supplemental

18 Authority, which is joined by document #387, is DENIED as moot.

19

20 IT IS FURTHER ORDERED THAT Defendants' Request (#401) for Review of

21 Magistrate Judge Decision re [391] Discovery Hearing is DENIED as

22 moot.

23

24

25 DATED: January 13, 2010.

26                                    UNITED STATES DISTRICT JUDGE

27

28                         22

# EXHIBIT 3



FOCUS - 3 of 129 DOCUMENTS

Analysis
As of: Feb 22, 2010

ALETA ROSE GOODWIN, ROBERT PAUL MCARTOR, and HEATHER
GABEL, individually and on behalf of a class of similarly situated individuals; JO-
SEPH JONES, MEISA JONES, MICHAEL R. TIERNEY and FREDRICK TULIP,
individually and on behalf of a class of similarly situated individuals; LINDA R.
BARBA; CYNTHIA and CHARLES FLAGG; JANICE GANNON; WILLIAM
DAN KLUTTZ; BRIAN E. JONES; JAMES H. MULLENNIX and JEANNE K.
MULLENIX; HEATHER MONAHAN and GEORGE R. MORENO; TRAVIS
RAWLINGS and SYLVIA RAWLINGS; JOHN SULLIVAN and DEBBIE SULLI-
VAN; JOSEPH E. THURSTON and ARLENE THURSTON; JESUS TOVAR;
JOHN F. WILBURN; and ROSALIE W. WILBURN, Plaintiffs, v. EXECUTIVE
TRUSTEE SERVICES, LLC.; COUNTRYWIDE HOME LOANS, INC., a New
York corporation; MERSCORP, INC., a Virginia corporation; MORTGAGE
ELECTRONIC REGISTRATION SYSTEMS, INC., a subsidiary of MERSCORP,
Inc, a Delaware Corporation; RECONTRUST COMPANY; SAXON MORTGAGE
INC.; T.D. SERVICE COMPANY; DEUTSCHE BANK NATIONAL TRUST
COMPANY; OCWEN LOAN SERVICING, LLC; WESTERN PROGRESSIVE,
LLC.; AHMSI DEFAULT SERVICES, INC.; QUALITY LOAN SERVICE COR-
PORATION; NATIONAL DEFAULT SERVICING CORPORATION; AZTEC
FORECLOSURE CORPORATION; FEDERAL HOME LOAN MORTGAGE
CORPORATION, a Virginia corporation; FEDERAL NATIONAL MORTGAGE
ASSOCIATION, a District of Columbia corporation; GMAC MORTGAGE, L.L.C.,
a Delaware corporation; NATIONAL CITY MORTGAGE, a foreign company and a
division of NATIONAL CITY BANK, a subsidiary of National City Corporation;
NATIONAL CITY CORPORATION, a Delaware corporation and a subsidiary of
PNC Financial Services, Inc.; PNC FINANCIAL SERVICES, INC., a Pennsylvania
corporation; J.P. MORGAN CHASE BANK, N.A., a New York corporation; CITI-
MORTGAGE, INC., a New York corporation; HSBC MORTGAGE CORPORA-
TION, U.S.A., a Delaware corporation; AIG UNITED GUARANTY CORPORA-
TION, a foreign corporation; WELLS FARGO BANK, N.A., a California corpora-
tion, dba WELLS FARGO HOME EQUITY and dba WELLS FARGO HOME
MORTGAGE division of WELLS FARGO BANK, N.A., a California corporation;
BANK OF AMERICA, N.A., a Delaware corporation; and GE MONEY BANK, an
Ohio corporation, Defendants.

3:09-CV-306-ECR-PAL

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEVADA

2010 U.S. Dist. LEXIS 2385

January 8, 2010, Decided

2010 U.S. Dist. LEXIS 2385, *

January 8, 2010, Filed

COUNSEL:   [*1] For Aleta Rose Goodwin, Plaintiff: Valerie R Edwards, LEAD ATTORNEY, PRO HAC VICE, Koeller, Nebeker, Carlson & Haluck, LLP, Phoenix, AZ; Megan K Dorsey, Koeller Nebeker Carlson & Haluck, LLP, Las Vegas, NV; Robert R. Hager, Treva J. Hearne, Hager and Hearne, Reno, NV.

For Robert Paul Mcartor, Heather Gabel, Joseph Jones, Meisa Jones, Michael R. Tierney, Frederick Tulip, Linda R. Barba, Cynthia Flagg, Charles Flagg, Janice Gannon, Brian E. Jones, James H. Mullennix, Jeanne K. Mullennix, Heather Monghan, George R. Moreno, Travis Rawlings, Sylvia Rawlings, John Sullivan, Debbie Sullivan, Joseph E. Thurston, Arlene Thurston, Jesus Tovar, John F. Wilburn, Rosalie W. Wilburn, Plaintiffs: Megan K Dorsey, Koeller Nebeker Carlson & Haluck, LLP, Las Vegas, NV; Robert R. Hager, Hager and Hearne, Reno, NV.

For William Dan Kluttz, Plaintiff: Megan K Dorsey, Koeller Nebeker Carlson & Haluck, LLP, Las Vegas, NV; Robert R. Hager, Treva J. Hearne, Hager and Hearne, Reno, NV.

For Lisa Cheney, Darrin Cheney, Joaquin Arevalo, Daniel Coslow, Rosa M. Diaz, Sergio Diaz, Pamela Horton, Victor Parece, Cody Promo, Gregory W. Promo, Matthew Robert Robinson, Tonya Dawn Robinson, Joan Blake, Ronnie McKinney, Signe [*2] Stehman, Plaintiffs: Robert R. Hager, LEAD ATTORNEY, Hager and Hearne, Reno, NV; Megan K Dorsey, Koeller Nebeker Carlson & Haluck, LLP, Las Vegas, NV.

For Executive Trustee Services, LLC, GMAC Mortgage, L.L.C., Defendants: Bruce T. Beesley, Paul A. Matteoni, LEAD ATTORNEYS, Lewis and Roca LLP, Reno, NV; Henry F Reichner, Ira S. Lefton, LEAD ATTORNEYS, Reed Smith LLP, Philadelphia, PA.

For Countrywide Home Loans, Inc., Recontrust Company, Bank of America, N.A., Defendants: Thomas M. Hefferon, LEAD ATTORNEY, Goodwin Procter LLP, Washington, DC; Ariel E. Stern, Jacob D Bundick, Ballard Spahr Andrews & Ingersoll, LLP, Las Vegas, NV.

For Merscorp, Inc., Defendant: Patrick G. Byrne, LEAD ATTORNEY, Snell & Wilmer, Las Vegas, NV; Robert M. Brochin, LEAD ATTORNEY, Morgan, Lewis & Bockius LLP, Miami, FL; Erica J Stutman, Snell & Wilmer L.L.P., Las Vegas, NV.

For Mortgage Electronic Registration Systems, Inc., Defendant: Patrick G. Byrne, LEAD ATTORNEY, Snell &

Wilmer, Las Vegas, NV; Robert M. Brochin, LEAD ATTORNEY, Morgan, Lewis & Bockius LLP, Miami, FL.

For Saxon Mortgage, Inc., Defendant: J. Matthew Goodin, P. Russell Perdew, Thomas J. Cunningham, LEAD ATTORNEYS, Locke Lord Bissell & Liddell LLP, [*3] Chicago, IL; Matthew McClendon, LEAD ATTORNEY, Locke Lord Bissell & Liddell LLP, Los Angeles, CA; Colt B. Dodrill, Wolfe Wyman, LLC, Las Vegas, NV.

For T.D. Service Company, IB Property Holdings, L.L.C., Amended Complaint (#47) filed 6/24/09, Defendants: Gregory L Wilde, Wilde & Associates, Las Vegas, NV.

For Deutsche Bank National Trust Company, Defendant: Jami Wintz McKeon, Jeremy S. Gladstone, LEAD ATTORNEYS, Morgan Lewis & Bockius LLP, San Francisco, CA; Ryan W. Herrick, LEAD ATTORNEY, John Desmond, Jones Vargas, Reno, NV; Laury M Macauley, Lewis and Roca LLP, Reno, NV.

For Ocwen Loan Servicing, LLC, Defendant: Ashley H. Chalmers, LEAD ATTORNEY, Randall W. Edwards, PRO HAC VICE, OMelveny & Myers LLP, San Francisco, CA; Brian P. Brooks, LEAD ATTORNEY, OMelveny & Myers LLP, Washington, DC; Elizabeth Lemond McKeen, LEAD ATTORNEY, OMelveny & Myers LLP, Newport Beach, CA; Joshua M Dickey, LEAD ATTORNEY, Dennis L. Kennedy, Bailey Kennedy, Las Vegas, NV.

For Western Progressive, LLC, Defendant: Brian P. Brooks, LEAD ATTORNEY, OMelveny & Myers LLP, Washington, DC; Dennis L. Kennedy, LEAD ATTORNEY, Joshua M Dickey, Bailey Kennedy, Las Vegas, NV; Randall W. Edwards, LEAD ATTORNEY, PRO HAC VICE, [*4] OMelveny & Myers LLP, San Francisco, CA.

For AHMSI Default Services, Inc., Defendant: Andrew R Louis, Matthew Previn, LEAD ATTORNEYS, BuckleySandler LLP, Washington, DC; Cynthia Alexander, LEAD ATTORNEY, Chad R. Fears, Erica J Stutman, Snell & Wilmer L.L.P., Las Vegas, NV.

For Quality Loan Service Corporation, Defendant: Kristin A Schuler-Hintz, LEAD ATTORNEY, McCarthy & Holthus, LLP, Las Vegas, NV.

2010 U.S. Dist. LEXIS 2385, *

For National Default Servicing Corporation, Defendant: Dana Jonathon Nitz, LEAD ATTORNEY, Olson, Cannon, Gormley & Desruisseaux, Las Vegas, NV.

For Aztec Foreclosure Corporation, Defendant: Dana Jonathon Nitz, LEAD ATTORNEY, Olson, Cannon, Gormley & Desruisseaux, Las Vegas, NV; Donna M. Osborn, Wright Finlay & Zak, LLP, Las Vegas, NV.

For Federal Home Loan Mortgage Corporation, Defendant: Howard S Lindenberg, LEAD ATTORNEY, Freddie Mac, McLean, VA; Mark S. Landman, LEAD ATTORNEY, PRO HAC VICE, Landman Corsi Ballaine & Ford, P.C., New York, NY; Chad R. Fears, Erica J Stutman, Snell & Wilmer L.L.P., Las Vegas, NV; Patrick G. Byrne, Snell & Wilmer, Las Vegas, NV.

For Federal National Mortgage Association, Defendant: Jill L Murch, Jonathan W Garlough, William J McKenna, LEAD ATTORNEYS, Foley & Lardner [*5] LLP, Chicago, IL; Chad R. Fears, Erica J Stutman, Snell & Wilmer L.L.P., Las Vegas, NV; Patrick G. Byrne, Snell & Wilmer, Las Vegas, NV.

For National City Mortgage, National City Bank, National City Corporation, PNC Financial Services, Inc., Defendants: Ariel E. Stern, LEAD ATTORNEY, Jacob D Bundick, Ballard Spahr Andrews & Ingersoll, LLP, Las Vegas, NV; David H. Plitinsky, LEAD ATTORNEY, Ballard Spahr Andrews & Ingersoll, LLP, Philadelphia, PA.

For J.P. Morgan Chase Bank, N.A., Defendant: Danielle J Szukala, LoAnn Pederson Pope, LEAD ATTORNEYS, Burke, Warren, MacKay & Serritella, P.C., Chicago, IL; Michael R. Kealy, LEAD ATTORNEY, Parsons Behle & Latimer, Reno, NV; David Hall, Parsons Behle & Latimer, Salt Lake City, UT.

For Citimortgage, Inc., Defendant: Courtney Miller O'Mara, LEAD ATTORNEY, Leslie Bryan Hart, Richard H. Bryan, Lionel Sawyer & Collins, Reno, NV; Lucia Nale, LEAD ATTORNEY, Chicago, MI; Thomas V Panoff, LEAD ATTORNEY, PRO HAC VICE, Mayer Brown LLP, Chicago, IL.

For HSBC Mortgage Corporation, U.S.A., Defendant: Erica J Stutman, LEAD ATTORNEY, Chad R. Fears, Cynthia Alexander, Snell & Wilmer L.L.P., Las Vegas, NV; Gregory J Marshall, LEAD ATTORNEY, Snell & Wilmer L.L.P., [*6] Phoenix, AZ; Patrick G. Byrne, LEAD ATTORNEY, Snell & Wilmer, Las Vegas, NV.

For AIG United Guaranty Corporation, Defendant: Christopher H. Byrd, LEAD ATTORNEY, Fennemore

Craig, Las Vegas, NV; Todd S Kartchner, LEAD ATTORNEY, Fennemore Craig, P.C., Phoenix, AZ.

For Wells Fargo Bank, N.A., doing business as Wells Fargo Home Equity doing business as Wells Fargo Home Mortgage, Defendant: Ariel E. Stern, LEAD ATTORNEY, Ballard Spahr Andrews & Ingersoll, LLP, Las Vegas, NV; Thomas M. Hefferon, LEAD ATTORNEY, Goodwin Procter LLP, Washington, DC; Chad R. Fears, Cynthia Alexander, Erica J Stutman, Snell & Wilmer L.L.P., Las Vegas, NV.

For GE Money Bank, Defendant: Andrew R Louis, Matthew Previn, LEAD ATTORNEYS, BuckleySandler LLP, Washington, DC; Cynthia Alexander, LEAD ATTORNEY, Chad R. Fears, Snell & Wilmer LLP, Las Vegas, NV; John J Frankovich, LEAD ATTORNEY, McDonald Carano Wilson LLP, Reno, NV; Miranda M Du, LEAD ATTORNEY, McDonald Carano & Wilson, Reno, NV.

For WMC Mortgage Corp., Amended Complaint (#47) filed 6/24/09, Defendant: Chad R. Fears, Snell & Wilmer, LLP, Las Vegas, NV; Mark D Wray, Law Offices of Mark Wray, Reno, NV.

For MTC Financial, Inc., doing business as Trustee Corps, Defendant: [*7] Michael B Sullivan, LEAD ATTORNEY, Robison Belaustegui Sharp & Low, Reno, NV.

For WMC Mortgage Corp., Duplicate Party, Defendant: Mark D Wray, Law Offices of Mark Wray, Reno, NV.

For James Sandborn, Defendant: Treva J. Hearne, Hager & Hearne, Reno, NV.

For Litton Loan Servicing LP, Defendant: Brian M. Forbes, Gregory N. Blase, Robert B Allensworth, LEAD ATTORNEYS, PRO HAC VICE, K&L Gates LLP, Boston, MA; Gary B. Schnitzer, Kravitz Schnitzer Sloane Johnson & Eberhardy, Chtd., Henderson, NV.

For Bank of New York, as successor to J.P. Morgan Chase Bank, N.a, as Trustee for BSALTA 2005-1, Defendant: Ariel E. Stern, Ballard Spahr Andrews & Ingersoll, LLP, Las Vegas, NV.

For Old Republic Default Management Services, Defendant: P. Russell Perdew, LEAD ATTORNEY, J. Matthew Goodin, Thomas J. Cunningham, PRO HAC VICE, Locke Lord Bissell & Liddell LLP, Chicago, IL; Ann O. Hall, Bowen Hall Ohlson & Osborne, Reno, NV; John Ohlson, Bowen, Hall, Ohlson & Osborne Chartered, Reno, NV.

2010 U.S. Dist. LEXIS 2385, *

For Federal Housing Finance Agency as Conservator of Fannie Mae and Freddie Mac, Intervenor: David Bergman, Howard Cayne, Arnold & Porter LLP, Washington, DC; David Fauvre, Arnold & Porter, Washington, DC; Michael W. Largo, [*8] Laxalt & Nomura, Ltd., Reno, NV; Stephen Hart, Washington, DC.

JUDGES: Edward C. Reed, Jr, UNITED STATES DISTRICT JUDGE.

OPINION BY: Edward C. Reed, Jr

OPINION

*Order*

This is a putative class action brought by numerous homeowners who are in danger of losing or have already lost their homes to foreclosure. Plaintiffs assert seven claims for relief: (1) violation of the Fair Housing Act; (2) violation of Nevada Uniform Lending Practices Act; (3) conspiracy to commit fraud and conversion; (4) conspiracy to commit fraud related to the MERS system; (5) unjust enrichment; (6) intentional infliction of emotional distress; and (7) fraud in the inducement. Before the Court are twenty two motions to dismiss (## 141, 143, 145, 153, 154, 156, 161, 162, 163, 164, 165 [1], [*9] 166, 167, 173, 198, 200, 202, 227 243, 342, 344 and 356). Plaintiffs oppose each motion separately. Defendants have replied. Also before the Court are Plaintiffs' motion for a preliminary injunction (#98), Plaintiffs' motion to certify class (#99), and Defendants' motion for protective order staying discovery and staying their oppositions to Plaintiffs' motions for class certification and preliminary injunction (#142). The motions are ripe, and we now rule on them.

1   On July 30, 2009, Defendant Taylor, Bean & Whitaker Mortgage Corp. (TB&W") filed a motion to dismiss (#165). On August 24, 2009, TB&W filed a voluntary bankruptcy petition under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Middle District of Florida, Case No. 3:09-bk-07047-JAF. Pursuant to 11 U.S.C. § 362, the commencement of TB&W's bankruptcy case operates as an automatic stay of all actions or proceedings, including this action, against TB&W. (See Notice of Bankruptcy (#228).) In light of the automatic stay, this Order does not rule on TW&W's motion (#165) to dismiss.

*I. Factual and Procedural History*

Plaintiffs in this case are homeowners who are [*10] in danger of losing or have already lost their homes to foreclosure. Plaintiffs filed a class action complaint (#1) and motion for preliminary injunction (#2) on June 9, 2009. On June 10, 2009, we granted (#5) Plaintiffs' motion for preliminary injunction to the extent it sought a temporary restraining order. We restrained Defendants from pursuing any foreclosure actions against Plaintiffs or their properties. The temporary restraining order remained in effect until June 22, 2009. On June 11, 2009, we amended (#10) the temporary restraining order. On June 22, 2009, we denied Plaintiffs' motion for preliminary injunction (#2) as moot in light of a stipulation of the parties (#26) and an Order (#28) of the Court approving the stipulation.

On June 24, 2009, Plaintiffs filed an amended complaint (#47). On June 29, 2009, Plaintiffs filed a motion (#59) for temporary restraining order and preliminary injunction. We granted (#67) the motion (#59) to the extent it sought a temporary restraining order. The temporary restraining order remained in effect until July 16, 2009. On July 15, 2009, certain Defendants stipulated (#110) that they would not initiate or advance any foreclosures with respect [*11] to certain properties at issue in this case pending a trial on the merits. On the same date we entered an Order (#111) approving parts of the stipulation (# 110) and disapproving others. On July 16, 2009, another stipulation (#118) was entered into between certain Defendants and certain Plaintiffs. On July 16, 2009, we held a hearing clarifying our previous Order (#111). (Mins. (#123).)

On July 11, 2009, Plaintiffs filed a motion (#98) for preliminary injunction and a motion (#99) to certify class. Defendants opposed both motions and Plaintiffs replied. On July 29, 2009, Defendants Federal Home Loan Mortgage Corporation and Federal National Mortgage Association filed (#142) a motion for "Protective Order Staying Discovery and Staying Their Oppositions to Plaintiffs' Motions for Class Certification and Preliminary Injunction and Joinder to Certain Defendants' Joint Motion to Temporarily Stay Proceedings." The motion (#142) is unopposed. Between July 29, 2009, and December 3, 2009, Defendants filed numerous motions to dismiss (## 141, 143, 145, 153, 154, 156, 161, 162, 163, 164, 165, 166, 167, 173, 198, 200, 202, 227, 243, 342, 344 and 356). Plaintiffs opposed the motions, and Defendants [*12] replied.

*II. Motion to Dismiss Standard*

A motion to dismiss under Fed. R. Civ. P. 12(b)(6) will only be granted if the complaint fails to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). On a motion to dismiss, "we

2010 U.S. Dist. LEXIS 2385, *

presum[e] that general allegations embrace those specific facts that are necessary to support the claim." *Lujan v. Defenders of Wildlife*, 504 U.S. 555; 561, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992) (quoting *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S, 871, 889, 110 S. Ct. 3177, 111 L. Ed. 2d 695 (1990)) (alteration in original). Moreover, "[a]ll allegations of material fact in the complaint are taken as true and construed in the light most favorable to the non-moving party." *In re Stac Elecs. Sec. Litig.*, 89 F.3d 1399, 1403 (9th Cir. 1996) (citation omitted).

Although courts generally assume the facts alleged are true, courts do not "assume the truth of legal conclusions merely because they are cast in the form of factual allegations." *W. Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981). Accordingly, "[c]onclusory allegations and unwarranted inferences are insufficient to defeat a motion to dismiss." *In re Stac Elecs.*, 89 F.3d at 1403 (citation omitted).

Review on a motion pursuant [*13] to Fed. R. Civ. P. 12(b) (6) is normally limited to the complaint itself. *See Lee v. City of L.A.*, 250 F.3d 668, 688 (9th Cir, 2001). If the district court relies on materials outside the pleadings in making its ruling, it must treat the motion to dismiss as one for summary judgment and give the non-moving party an opportunity to respond. Fed. R. Civ. P. 12(d); *see United States v. Ritchie*, 342 F.3d 903, 907 (9th Cir. 2003). "A court may, however, consider certain materials -- documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice -- without converting the motion to dismiss into a motion for summary judgment," *Ritchie*, 342 F.3d at 908.

If documents are physically attached to the complaint, then a court may consider them if their "authenticity is not contested" and "the plaintiff's complaint necessarily relies on them." *Lee*, 250 F.3d at 688 (citation, internal quotations, and ellipsis omitted). A court may also treat certain documents as incorporated by reference into the plaintiff's complaint if the complaint "refers extensively to the document or the document forms the basis of the plaintiff's claim." *Ritchie*, 342 F.3d at 908, [*14] Finally, if adjudicative facts or matters of public record meet the requirements of Fed. R. Evid. 201, a court may judicially notice them in deciding a motion to dismiss. *Id.* at 909; *see* Fed. R. Evid. 201(b) ("A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.").

*III. Analysis*

*A. Fair Housing Act*

The first cause of action alleged in Plaintiffs' first amended complaint pertains only to Plaintiff Aleta Rose Goodwin ("Goodwin"). The complaint alleges that Defendants targeted Goodwin, "an unmarried African American woman," because of her "race and/or national origin and gender," and offered Goodwin a "less-favorable loan than would have been offered to a white borrower or a male borrower, all other things being equal." (Am, Compl. PP 148, 151, 152 (#47).)

The Fair Housing Act ("FHA") prohibits discrimination "against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection [*15] therewith, because of race, color, religion, sex, familial status, or national origin," 42 U.S.C. § 3604(b), The FHA has a two year statute of limitations. *Id.* § 3613(a)(1)(A).

Goodwin's FHA claim is untimely. The conduct giving rise to her claim is the issuance of a "less-than-favorable loan." (Am, Compl. P 152 (#47).) The loan in question was issued on November 29, 2006, when Goodwin executed her deed of trust. (*Id.* P 103 (#47).) The statute of limitations thus began running on that date and expired on November 29, 2008. Plaintiff did not file her complaint until June 9, 2009. Even if we assume that Defendants' actions violated the FHA, because Goodwin filed this motion under FHA more than two years after the alleged discriminatory acts, Goodwin's FHA claim is time-barred.

Goodwin's allegation that Defendants engaged in a "continuing violation whereby each Defendant has engaged in a pattern or extended practice of exploiting the market of Hispanics, the disabled and women" (*Id.* P 155 (#47)) does not cure the untimeliness of Goodwin's claim. Under the continuing violation theory, when "a plaintiff, pursuant to the Fair Housing Act, challenges not just one incident of conduct violative [*16] of the Act, but an unlawful practice that continues into the limitations period, the complaint is timely when it is filed within [the statutory period] of the last asserted occurrence of that practice." *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 380-81, 102 S. Ct. 1114, 71 L. Ed. 2d 214 (1982). The continuing violation theory is not applicable here because Goodwin claims to have suffered only a single incident of conduct violative of the Act, namely the "less-than-favorable loan." Moreover, Goodwin's allegation regarding the patterns and practices of all Defendants is a mere legal conclusion unsupported by any factual allegations and, as such, is not a plausible claim for a continuing violation. *See In re Stac Elecs.*, 89 F.3d at 1403 (citation omitted). Plaintiffs' first cause of action thus fails to state a claim and will be dismissed.

*B. Unfair Lending Practices*

2010 U.S. Dist. LEXIS 2385, *

Plaintiffs allege that all Defendants violated Nev. Rev. Stat, § 598D.100 by continuing "to enforce mortgages secured by Plaintiffs' homes that included no evaluation of any commercially reasonable means or mechanisms that would demonstrate the Plaintiffs' capacity to repay . . . ," (Am. Compl. P 162 (#47).) Defendants have moved to dismiss this claim on [*17] various grounds. Some argue that they are not lenders and thus they do not fall within the purview of the statute. Others argue that the claim is too vague and conclusory to survive a motion to dismiss. Still others argue that the version of the statute that Plaintiffs allege they violated was not in force until October 1, 2007, and there is no provision for its retroactive application. Thus, these provisions cannot apply to those Plaintiffs' loans, which were obtained before that date.

1. 2007 Amendments

The Nevada Legislature adopted Assembly Bill 440 during the 2007 session, which amended Nev. Rev. Stat. Chapter 598D, effective October 1, 2007. The bill, inter alia, redefined the scope of "home loan[s]" subject to the chapter's provisions. See A.B. 440, Section 2, 2007 Nev. Stat. 2846 (" AB 440 "). The definition of "home loan" in the pre-amendment version of Nev. Rev. Stat, P 598D.040 was as follows:

"Home loan" means a consumer credit transaction that 1. Is secured by a mortgage loan which involves real property located within this State; and 2. Constitutes a mortgage under § 152 of the Home Ownership and Equity Protection Act of 1994, 15 U.S.C. § 1602(aa), and the regulations adopted [*18] by the Board of Governors of the Federal Reserve System pursuant thereto, including, without limitation, 12 C.F.R. § 226.32.

NEV. REV. STAT, P 598D.040 (2006)

The 2007 legislation redefined the operative term "home loan," inserting a second "without limitation" before the clause about the Home Ownership and Equity Protection Act ("HOEPA"):

"Home loan" means a consumer credit transaction that is secured by a mortgage loan which involves real property located within this State and includes, without limitation, a consumer credit transaction that constitutes a mortgage under § 152 of the Home Ownership and Equity Protec-

tion Act of 1994, 15 U.S.C. § 1602(aa), and the regulations adopted by the Board of Governors of the Federal Reserve System pursuant thereto, including, without limitation, 12 C.F.R. § 226.32.

NEV. REV. STAT, § 598D.040 (2008)

In other words, the pre-amendment version of Nev. Rev. Stat. Chapter 598D regulated only those home loans subject to regulation under HOEPA. The Federal Reserve has described HOEPA regulated loans as

closed-end, non-purchase money mortgages secured by a consumer's principal dwelling (other than a reverse mortgage) where either: (a) The APR at consummation [*19] will exceed the yield on Treasury securities of comparable maturity by more than 8 percentage points for first-lien loans, or 10 percentage points for subordinate-lien loans; or (b) the total points and fees payable by the consumer at or before closing exceed the greater of 8 percent of the total loan amount, or $ 547 for 2007 (adjusted annually).

Truth in Lending; Final Rule, 73 Fed. Reg. 44522, 44527, n.20 (Jul. 30, 2008). See also 15 U.S.C. § 1602(aa); 12 C.F.R. § 226.32. The post-amendment version is more expansive, effectively covering any home loan for property located in Nevada.

Section 598D as amended lacks any provision for its retroactive application, and civil statutes are normally presumed to operate only prospectively. United States v. Perry, 431 F.2d 1020, 1023 (9th Cir. 1970). The broader post-amendment language is therefore only applicable to loans issued after October 1, 2007.

The Complaint thus fails to state a claim under the Unfair Lending Act as to Plaintiffs who obtained their loans before October 1, 2007, [2] because the Complaint does not allege that any Plaintiff obtained a "home loan" within the pre-amendment definition of Nev. Rev. Stat, P 598D.040.

2 The only Plaintiffs [*20] who obtained home loans after October 1, 2007, are Joseph Arevalo, Victor Parsco, Matthew Robert Robinson and Tanya Dawn Robinson. The remaining Plaintiffs obtained home loans before October 1, 2007.

Moreover, the Complaint does not allege conduct that would have constituted an unfair lending practice prior to October 1, 2007. Before October 1, 2007, Nev. Rev. Stat. § 598D.100(1)(b) stated that "[i]t is an unfair lending practice for a lender to . . . [k]nowingly or intentionally make a home loan to a borrower based solely upon the equity of the borrower in the home property and without determining that the borrower has the ability to repay the home loan from other assets, including, without limitation, income." NEV. REV. STAT. § 598D.100(1)(b)(2006). [3] Plaintiffs' Complaint lacks any allegations that Defendants extended credit to any Plaintiff based solely upon the equity in the property. Thus, Plaintiffs fail to properly plead the elements of unfair lending practices based upon the pre-October 2007 version of the statute.

> 3   In its current form, Nev. Rev. Stat. § 598D.100 states that it "is an unfair lending practice for a lender to . . . [k]nowingly or intentionally make a home loan," [*21] other than a reverse mortgage, to a borrower, including, without limitation, a low-document home loan, no-document home loan or stated-document home loan, without determining, using any commercially reasonable means or mechanism, that the borrower has the ability to repay the home loan." NEV. REV. STAT. § 598D.100(1)(b)(2008).

Because the Complaint fails to allege conduct that would have constituted an unfair lending practice prior to October 1, 2007, and fails to allege that any Plaintiff obtained a "home loan" within the pre-amendment definition of Nev. Rev. Stat, Chapter 598D, dismissal of the unfair lending claim as to Plaintiffs who obtained their home loans prior to October 1, 2007 is appropriate.

### 2. Vagueness

The Complaint's unfair lending practices claim also fails with respect to the Plaintiffs who obtained home loans subsequent to October 1, 2007. Plaintiffs' second cause of action is simply too vague to survive a motion to dismiss. Plaintiffs assert the unfair lending practices claim against all Defendants, alleging that they collectively "enforced" mortgages that "included no evaluation of any commercially reasonable means or mechanism that would demonstrate the Plaintiffs' [*22] capacity to repay . . . ." (Am. Compl. P 162 (#47).) Nev. Rev. Stat. § 598D.100 proscribes certain lending practices; it does not regulate the enforcement of loans. Indeed, the statute applies only to lenders. NEV. REV. STAT. § 598D.100. "Lender" is defined as "a mortgagee, beneficiary of a deed of trust or other creditor who holds a mortgage, deed of trust or other instrument that encumbers home property as security for the repayment of a home loan."

Id. § 598D.050. We cannot ascertain from the broad and sweeping allegations in the Complaint which of the many named Defendants qualify as lenders within the meaning of the statute. Claims that fail to identify which defendant is responsible for what alleged injury do not adequately place defendants on notice of the claim or claims being asserted against them. See Fortaleza v. PNC Fin. Servs. Group, Inc., 642 F. Supp. 2d 1012, 1022 (N.D. Cal. 2009).

The assertion of this claim against all Defendants has caused a great deal of confusion. Many non-lender Defendants have expended resources filing motions to dismiss on that ground. Plaintiffs, unable to defend this claim as to many of these Defendants, have already withdrawn the claim with [*23] respect to National Default Servicing Corp., Aztec Foreclosure Corporation, AHMSI Default Services, Inc., MTC Financial Inc. dba Trustee Corps., Citimortgage, Inc., GMAC Mortgage, LLC, and Executive Trustee Services, LLC. (P.'s Opp. at 5 (#210).); (P.'s Opp. at 8-9 (# 214)); (P.'s Opp. at 11 (# 222)). While it is helpful that Plaintiffs have withdrawn the claim as to some Defendants, it is nonetheless inappropriate to allege a claim broadly against all Defendants without a legal basis for doing so.

Finally, the Complaint alleges that certain Plaintiffs were "qualified by their various lenders only on the basis of credit score and collateral market value or stated income that was not verified." (Am. Compl. P 162 (#47).) This allegation falls short of establishing an identifiable claim not only because it fails to identify which lenders engaged in this conduct, but also because it does not identify how each lender at issue calculated or assessed each Plaintiff's ability to repay. Plaintiffs' second claim for relief thus fails to state a claim and will be dismissed.

### C. Conspiracy to Commit Fraud and Conversion

Plaintiffs' third claim for relief alleges that various Defendants engaged in [*24] a conspiracy to "deprive Plaintiffs of their property through fraud and misrepresentation that would result in Plaintiffs entering into loan agreements for which they were ultimately not qualified and which would eventually result in Plaintiffs' inability to make payments and stay in their homes." (Am. Compl. P 168 (#47).) Under Nevada law, an actionable civil conspiracy-to-defraud claim exists when there is (1) a conspiracy agreement; (2) an overt act of fraud in furtherance of the conspiracy; and (3) resulting damages to the plaintiff. Jordan v. State ex rel. Dept. of Motor Vehicles and Public Safety, 121 Nev. 44, 110 P.3d 30, 51 (Nev. 2005). "Thus, an underlying cause of action for fraud is a necessary predicate to a cause of action for conspiracy to defraud." Id. A showing of fraud, in turn, requires (1) a false representation, (2) knowledge or belief that the representation was false, (3) intent to induce reliance on the

representation, (4) that the reliance must be justifiable, and (5) damages. *Lubbe v. Barba,* 91 Nev. 596, 540 P.2d 115, 117 (Nev. 1975).

A claim for conspiracy to commit fraud must be pled with the same particularity as the fraud itself. *See Wanstiek v. Mel's of Modesto, Inc.,* 811 F. Supp. 1402, 1406 n.3 (N.D. Cal. 1992) [*25] (so stating). Thus, under Rule 9(b), a party must state with particularity the circumstances constituting the conspiracy. *See* FED. R. CIV. P. 9(b). Allegations of conspiracy must be accompanied by "the who, what, when, where, and how of the misconduct charged." *See Vess v. Ciba-Geigy Corp. USA,* 317 F.3d 1097, 1106 (9th Cir. 2003) (so stating, with respect to fraud) (internal quotation marks omitted). Thus, to state a claim for conspiracy "a plaintiff must allege with sufficient factual particularity that defendants reached some explicit or tacit understanding or agreement. It is not enough to show that defendants might have had a common goal unless there is a factually specific allegation that they directed themselves towards this wrongful goal by virtue of a mutual understanding or agreement." *S. Union Co. v. Sw. Gas Corp.,* 165 F. Supp. 2d 1010, 1020-21 (D. Ariz. 2001) (internal citations and quotation marks omitted).

Plaintiffs have failed to plead the alleged conspiracy to commit fraud with particularity. Plaintiffs have not stated how or even when the alleged conspiracy was formed. Plaintiffs have not included any factual allegations pertaining to how Defendants targeted Plaintiffs. [*26] In addition, the Complaint lumps multiple Defendants together without differentiating between them or the allegations against them. *See Swartz v. KPMG, LLP,* 476 F.3d 756, 764 (9th Cir. 2007) (noting that "Rule 9(b) does not allow a complaint to merely lump multiple defendants together"). Such general allegations are insufficient because "[a] bare allegation of a conspiracy is almost impossible to defend against, particularly where the defendants are large institutions with hundreds of employees entering into contracts and agreements daily." *Kendall v. Visa U.S.A., Inc.,* 518 F.3d 1042, 1047 (9th Cir. 2008).

With regard to the underlying fraud, the complaint fails to specify what false representations underlie the claim. Plaintiffs' reference to "representations . . . related to Plaintiffs' ability to repay the loan or to refinance the loan in taking the loan and signing the documents," (Am. Compl. P 170 (#47)) is insufficient under Rule 9(b). [4]

    4  We do not have authority to rule on claims or issues related to the formation and/or operation of the MERS system. Pursuant to a transfer order issued by the United States Judicial Panel on Multidistrict Litigation, the claims in this case that [*27] are related to the formation and/or opera-

tion of the MERS system are under the jurisdiction of the District of Arizona and assigned to the Honorable James A. Teilborg for coordinated or consolidated pretrial proceedings. (*In Re: Mortgage Electronic Registration Systems (MERS) Litigation,* MDL No. 2119, Transfer Order (#412).) It is not entirely clear whether the claims discussed here fall within this definition, in part because of the lack of specificity we have already described. This Order is not intended to refer to or rule upon any issues which are included in the MDL transfer order.

Finally, it should be noted that the title of Plaintiffs' third claim for relief is "Conspiracy to Commit Fraud and Conversion," (Am. Compl. at 49 (#47).) The substance of this claim's allegations focuses on the fraud underlying the alleged conspiracy, not conversion. Nonetheless, to the extent the claim is also premised on the underlying tort of conversion, Plaintiffs likewise fail to state a claim. Conversion, under Nevada law, "is a distinct act of dominion wrongfully exerted over personal property." *Edwards v. Emperor's Garden Restaurant,* 122 Nev. 317, 130 P.3d 1280, 1287 (Nev. 2006). In this case, Plaintiffs [*28] are alleging that Defendants conspired to "unlawfully deprive plaintiffs of their homes," (Am. Compl. P 175 (#47).) Thus, the subject of the alleged conversion is real property, not personal property. Therefore, to the extent the conspiracy claim is premised on the underlying tort of conversion, Plaintiffs fail to state a claim. Plaintiffs' third claim for relief will be dismissed.

**D. Conspiracy to Commit Fraud Related to the MERS system**

Plaintiffs' fourth claim for relief alleges a conspiracy to commit fraud related to the MERS system. Pursuant to a transfer order issued by the United States Judicial Panel on Multidistrict Litigation, the claims in this case that are related to the formation and/or operation of the MERS system are under the jurisdiction of the District of Arizona and assigned to the Honorable James A. Teilborg for coordinated or consolidated pretrial proceedings. (*In Re: Mortgage Electronic Registration Systems (MERS) Litigation,* MDL No. 2119, Transfer Order (#412).) Thus, we will not rule on the pending motions to dismiss with regard to Plaintiffs' fourth claim for relief alleging conspiracy to commit fraud related to the MERS system.

**E. Unjust Enrichment**

Plaintiffs' [*29] fifth claim for relief alleges unjust enrichment against all Defendants. Under Nevada law, unjust enrichment occurs when "a person has and retains a benefit which in equity and good conscience belongs to another." *Leasepartners Corp. v. Robert L. Brooks Trust*

*Dated November 12, 1975*, 113 Nev. 747, 942 P.2d 182, 187 (Nev. 1997). An action "based on a theory of unjust enrichment is not available when there is an express, written contract, because no agreement can be implied when there is an express agreement." *Id.* The doctrine of unjust enrichment thus only "applies to situations where there is no legal contract but where the person sought to be charged is in possession of money or property which in good conscience and justice he should not retain but should deliver to another [or should pay for]," *Id.* (quoting 66 Am. Jur. 2d Restitution § 11 (1973)).

The basic premise of Plaintiffs' claim for unjust enrichment is that they were "targeted for and lured" into their mortgages. (Am. Compl. P 214 (#47).) These mortgages are express and written contracts; Plaintiffs' fifth claim thus fails and will be dismissed.

### F. Intentional Infliction of Emotional Distress

Plaintiffs' sixth cause of action alleges intentional [*30] infliction of emotional distress. The elements of a cause of action for intentional infliction of emotional distress are "(1) extreme and outrageous conduct with either the intention of, or reckless disregard for, causing emotional distress, (2) the plaintiff's having suffered severe or extreme emotional distress and (3) actual or proximate causation," *Dillard Dept. Stores, Inc. v. Beckwith*, 115 Nev. 372, 989 P.2d 882, 886 (Nev. 1999). Extreme and outrageous conduct is that which is "outside all possible bounds of decency and is regarded as utterly intolerable in a civilized community," *Maduike v. Agency Rent-A-Car*, 114 Nev. 1, 953 P.2d 24, 26 (Nev. 1998) (internal quotation marks and citation omitted). "Severe or extreme emotional distress" is distress "so severe and of such intensity that no reasonable person could be expected to endure it," *Alam v. Reno Hilton Corp.*, 819 F. Supp. 905, 911 (D. Nev. 1993). A claim for intentional infliction of emotional distress operates on a continuum: the less extreme the outrage, the greater the need for evidence of physical injury or illness from the emotional distress. *Chowdhry v. NLVH, Inc.*, 109 Nev. 478, 851 P.2d 459, 462 (Nev. 1993)

Neither the actions allegedly carried out by Defendants [*31] nor the distress allegedly suffered by Plaintiffs is sufficient to state a claim for intentional infliction of emotional distress. The alleged actions underlying this claim are, inter alia, misrepresentation of the loans at issue, negotiation of those loans and the closing of the loans. Plaintiffs argue that Defendants' actions are extreme and outrageous because Plaintiffs were particularly vulnerable to predatory lending practices and the loans at issue concerned Plaintiffs' residences. Neither of these circumstances, even if true, transforms the alleged conduct into conduct that is "utterly intolerable in a civilized community," *Maduike*, 953 P.2d at 26. Moreover, the

only physical symptoms of distress allegedly suffered by Plaintiffs are sleeplessness and headaches. (Am. Compl. P 225 (#47).) This distress is not so severe that "no reasonable person could be expected to endure it." *Alam*, 819 F. Supp. at 911. Plaintiffs' claim for intentional infliction of emotional distress thus fails to state a claim.

### G. Fraud in the Inducement

Plaintiffs' seventh claim for relief is for fraud in the inducement. Like Plaintiffs' claim for conspiracy to commit fraud and conversion, this claim fails to [*32] satisfy the particularity requirements of Rule 9(b), Federal Rule of Civil Procedure 9(b) requires that a complaint "must state with particularity the circumstances constituting fraud or mistake," FED. R. CIV. P. 9(b), Rule 9(b) "requires . . . an account of the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations." *Swartz*, 476 P.3d at 764 (internal quotation marks and citation omitted). In a case with multiple defendants, "Rule 9(b) does not allow a complaint to merely lump multiple defendants together but requires plaintiffs to differentiate their allegations when suing more than one defendant and inform each defendant separately of the allegations surrounding his alleged participation in the fraud." *Id.* at 764-65 (internal quotation marks and citation omitted). Plaintiffs' claim for fraud in the inducement fails to allege who made what misrepresentations or when any of the alleged misrepresentation took place. The claim is replete with vague and conclusory allegations such as "Defendants misrepresented the ability of Plaintiffs, and other similarly situated, to qualify for the loans." (Am. Compl. P 230 [*33] (#47).)

To the extent that Plaintiffs' fraud in the inducement claim is based on omissions by Defendants the complaint also fails to state a claim. Under Nevada law, one of the five essential elements of a claim for fraudulent concealment is that the "defendant must have been under a duty to disclose the fact to the plaintiff." *Nev. Power Co. v. Monsanto Co.*, 891 F. Supp. 1406, 1415 (D. Nev. 1995). Plaintiffs do not allege what duties, if any, the various Defendants named in the Complaint owed Plaintiffs. Plaintiffs' claim for fraud in the inducement thus fails.

### IV. Leave to Amend

Under Rule 15(a) leave to amend is to be "freely given when justice so requires." FED. R. CIV, P. 15(a). In general, amendment should be allowed with "extreme liberality." *Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 712 (9th Cir. 2001) (quoting *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990)). If factors such as undue delay, bad faith, dilatory motive, undue prejudice or futility of amend-

ment are present, leave to amend may properly be denied in the district court's discretion. *Eminence Capital, LLC v. Aspeon, Inc.,* 316 F.3d 1048, 1051-52 (9th Cir. 2003)(discussing *Foman v. Davis,* 371 U.S. 178, 182, 83 S. Ct. 227, 9 L. Ed. 2d 222 (1962).

In [*34] light of the liberal spirit of Rule 15(a), Plaintiffs should have an opportunity to amend their complaint. There is no reason why Plaintiffs could not cure the deficiencies we have noted here, or at least some of them, such as the conclusory and vague allegations against undifferentiated defendants. If the amended complaint is similarly deficient, however, we may be forced to conclude that leave to further amend would be futile.

*V. Motion for Preliminary Injunction, Motion to Certify Class and Motion for Protective Order*

In light of this Order dismissing all of Plaintiffs' claims on which we have authority to rule under the MDL Order, Plaintiffs' motions for class certification (#99) and a preliminary injunction (#98) are moot, as is Defendants' motion (#142) for a protective order staying discovery and staying their oppositions to Plaintiffs' motions for class certification and preliminary injunction. These motions will therefore be denied as moot.

Our dismissal of Plaintiffs' motion for class certification (#99) does not conflict with the Ninth Circuit's recent decision in *United Steel, Paper & Forestry, Rubber, Mfg. Energy, Allied Indus. & Serv. Workers United Steel, Paper & Forestry, Rubber, Mfg. Energy, Allied Indus. & Serv. Workers Intern. Union, AFL-CIO, CLC v. ConocoPhillips Co.,* Nos. 09-56578, 09-56579, 2010 U.S. App. LEXIS 238, 2010 WL 22701 (9th Cir. Jan, 6, 2010). [*35]  In that case, the Ninth Circuit held that a district court abused its discretion when it assumed, for the purpose of Federal Rule of Civil Procedure 23 certification analysis and without any separate inquiry into the merits, that plaintiffs' legal theory would fail. 2010 U.S. App. LEXIS 238, [WL] at *1. Unlike the posture in *United Steel,* here, in addition to a motion for class certification, a number of motions to dismiss are before the Court. Our inquiry into the merits of Plaintiffs' claims was conducted along with respect to the pending motions to dismiss. Our ultimate conclusion with respect to those motions renders Plaintiffs' motion for class certification moot. In light of the circumstances of this action, it is therefore appropriate for this Court to enter an Order

dismissing the non-MDL claims without first ruling on the motion for class certification.

*VI. Conclusion*

Plaintiffs have failed to state a claim upon which relief can be granted. The Complaint, to the extent it does not involve claims assigned to the District of Arizona pursuant [*36] to the MDL order, will be dismissed. Plaintiffs will be given leave to amend. Should they choose to do so, however, they shall specify which allegations apply to which Defendants and which Plaintiffs. Plaintiffs' motions for class certification (#99) and a preliminary injunction (#98) and Defendants' motion (#142) for a protective order staying discovery and staying their oppositions to Plaintiffs' motions for class certification and preliminary injunction are moot and will be denied on that basis.

*IT IS, THEREFORE, HEREBY ORDERED THAT* Defendants' Motions to Dismiss (## 141, 143, 145, 153, 154, 156, 161, 162, 163, 164, 166, 167, 173, 198, 200, 202, 243, 342, 344 and 356) are *GRANTED* on the following basis: We lack jurisdiction over Plaintiffs' claims that were transferred to the MDL; we thus do not rule on the motions to the extent they address Plaintiffs' claims related to the formation and/or operation of the MERS system. The motions are granted with respect to Plaintiffs' remaining claims for relief. Plaintiff shall have 21 days within which to file an amended complaint addressing the deficiencies discussed here. It is not within our authority to grant Plaintiffs' leave to amend [*37] with respect to claims before the MDL.

*IT IS FURTHER ORDERED THAT* Plaintiffs' Motion for Preliminary Injunction (#98) is *DENIED* as moot.

*IT IS FURTHER ORDERED THAT* Plaintiffs' Motion to Certify Class (#99) is *DENIED* as moot.

*IT IS FURTHER ORDERED THAT* Defendants' motion (#142) for "Protective Order Staying Discovery and Staying Their Oppositions to Plaintiffs' Motions for Class Certification and Preliminary Injunction and Joinder to Certain Defendants' Joint Motion to Temporarily Stay Proceedings" is *DENIED* as moot.

DATED: January 8, 2010.

UNITED STATES DISTRICT JUDGE

Exhibit 4

# EXHIBIT 4

```
 1                    UNITED STATES DISTRICT COURT
                          DISTRICT OF NEVADA
 2          BEFORE THE HONORABLE ROBERT C. JONES, DISTRICT JUDGE
                              ---oOo---
 3

 4     LACY J. DALTON, et al.,        :
                                      :
 5                   Plaintiffs,      :   No. 3:09-CV-534-RCJ(VPC)
                                      :
 6             -vs-                   :   October 9, 2009
                                      :
 7     CITIMORTGAGE, INC., et al.,    :   Reno, Nevada
                                      :
 8                   Defendants.      :
                                      :
 9     _____:

10

11            TRANSCRIPT OF MOTION FOR PRELIMINARY INJUNCTION

12     APPEARANCES:

13     FOR THE PLAINTIFFS:      ROBERT R. HAGER and TREVA J. HEARNE
                                Attorneys at Law
14

15     FOR THE DEFENDANTS:      BRUCE BEESLEY, ROBERT M. BROCHIN,
                                HOWARD CAYNE, J. MATTHEW GOODIN,
16                              DAVID R. HALL, MICHAEL LARGE,
                                JILL L. MURCH, THOMAS V. PANOFF,
17                              MATTHEW PREVIN, ARIEL E. STERN,
                                CHAD FEARS, ALEX FLANGAS, THOMAS
18                              HEFFERON, JEREMY GLADSTONE, RYAN
                                HERRICK, KARL TILLEMAN, and
19                              PAUL MATTEONI
                                Attorneys at Law
20

21     Reported by:            Margaret E. Griener, CCR #3, RDR
                                Official Reporter
22                              400 South Virginia Street
                                Reno, Nevada 89501
23                              (775)329-9980

24

25              COMPUTER-ASSISTED TRANSCRIPTION
```

MARGARET E. GRIENER, RDR, CCR NO. 3, OFFICIAL REPORTER
(775) 329-9980

128

1    from an appointment, disposition or assignment.

2              THE COURT:  Counsel, we're just redundant now.

3    I've got the whole thing.

4              MR. HAGER:  Your Honor, under Nevada law, a

5    promissory note is enforceable by the holder of the note, a

6    note holder in possession of the note who has the rights of a

7    holder.  We don't have any of those parties here today.  We

8    don't have anybody here today that we're seeking to enjoin

9    that shows that they have any authority to act on a holder of

10   the note or anybody who was authorized to enforce that note.

11             THE COURT:  Thank you.

12             MR. HAGER:  Thank you, your Honor.

13             THE COURT:  This matter is submitted, and I'll

14   issue a written order that will explain totally my analysis.

15   However, I'm going to announce the result now so that you can

16   protect yourselves.

17        I am going to deny the preliminary injunction.  By

18   protecting yourselves, I mean pursue the appropriate method of

19   bankruptcy, automatic stay, state filing, whatever else you

20   need to do to protect yourselves.

21        You have the right to an immediate appeal with

22   denial or granting of a preliminary injunction so I'm simply

23   advising you of the result so that you can proceed to protect

24   yourself forthwith.

25        There's simply no basis for asking for a preliminary

MARGARET E. GRIENER, RDR, CCR NO. 3, OFFICIAL REPORTER
(775) 329-9980

129

1   injunction, and the primary ground is that there is an

2   insufficient statement of evidence to support the complaint,

3   and as far as this Court can determine, there is no likelihood

4   of success on the merits.

5          But I speak now to the underlying basis for denying

6   the motion to counsel and to any clients that you represent

7   that may be here.  The problem with this lawsuit is that you

8   are -- I'm sorry, with the motion for preliminary injunction,

9   is that you are simply not presenting an equitable request for

10  an equitable remedy.

11         There is a damage remedy available at the end of any

12  lawsuit.  A jury will decide it and/or the Court will decide

13  it on the law, and you have rights to appeal.

14         What you're asking for here is a preliminary

15  injunction to stop whoever these entities are from

16  foreclosing, an equitable remedy, and your equitable remedy is

17  unaccompanied by an equitable offering which you're mandated

18  to do when the Court sits in equity.

19         It is simply not fair to, number one, ask these

20  parties to be preliminarily or forever barred from foreclosing

21  on these properties without an equitable response; Judge,

22  we'll make the payments going forward; Judge, in three months

23  we'll start making the payments going forward.

24         It's not a matter of -- you've recognize the

25  obligation to provide some equitable recourse in your offer